[No. A046258. First Dist., Div. Three. May 15, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNSON CHUN LEE, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Certified for publication except for parts III, IV, V, VI, VIII, and IX. (Cal. Rules of Court, rules 976(b), 976.1.)

**COUNSEL**

Mark L. Christiansen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Donna B. Chew and John T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STRANKMAN, J.**—A jury convicted Johnson Chun Lee of aggravated mayhem, mayhem, and assault with force likely to produce great bodily injury. (Pen. Code, §§ 205, 203, 245, subd. (a)(1).)[1] The jury also found that defendant intentionally inflicted great bodily injury during the assault. (§ 12022.7.) We have concluded that the conviction of aggravated mayhem must be reversed because the evidence was insufficient to support a determination that defendant specifically intended to disable his victim permanently.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

## I. *Facts*

On November 29, 1988, Ms. Jian Ai Li[2] lived in a second floor room, room 16, at 1329 Grant Avenue in San Francisco. Sixty-three-year-old Mr. Wing Sak Chu lived in room 11, and defendant lived in room 10.

At approximately 6:30 p.m., Li was washing dishes in the hallway outside of her room. Li's four-year-old son, Allen, was in Chu's room watching television. Li saw defendant push Allen out of Chu's room and shut the door. Li heard defendant ask Chu if he had or if he wanted a beer. Chu said no; then he started screaming for help. Li and Allen ran into their room and locked the door, since Li was frightened by fights.

Chu continued screaming, and Li looked through the peephole in her door. Through the hole she could see defendant kick Chu twice, although she could not see where the kicks landed. She also heard defendant say, "Are you dying?"

Li remained in her room until the police arrived, about an hour later. When she left her room she saw Chu lying motionless on the floor by his door, with blood on his face.

Chu testified that defendant had been his neighbor for about three months. Before this incident, Chu had never had any problem with defendant. On the day of the attack, defendant entered his room uninvited, said, "You know what to do," and started to hit Chu with his fist. The first blow was to the nose, the second to the eye, and the third to the mouth. Chu crawled to the door, cried for help and passed out. When he awoke he was in the hospital. Chu could think of no reason why defendant would hit him.

Officer Tom Yuen was dispatched to 1329 Grant Avenue on the report of an assault, found Chu lying in the doorway of room 11, called an ambulance, and accompanied Chu to San Francisco General Hospital. Li identified defendant as Chu's assailant and provided a description which was broadcast over the police radio. Defendant was apprehended by Officer Maginniss around 9:30 p.m., and was taken to 1329 Grant Avenue, where he was identified by Li.

Dr. Barry Saver testified that Chu suffered from a dense right hemiparesis, meaning that he had little to no use of any of the right side of his body. In essence, he had been paralyzed by an acute head trauma. Chu sustained

---

[2] Ms. Li spelled her name "Lee." However, since it is spelled "Li" throughout the reporter's transcript and because defendant has the same last name, the transcript spelling will be used in this opinion to avoid confusion.

permanent disability to his right arm and leg as well as his brain. The injury was consistent with either being punched or kicked in the head.

Defendant testified on his own behalf and denied the attack. Defendant said that he entered 1329 Grant Avenue at about 6 p.m. He saw Li washing dishes in the hallway sink. Chu's door was open and he entered; when he tried to hug the boy who was in the room, the boy ran away. Defendant then went to his room.

About 10 minutes later, defendant heard some screaming in Chu's room. Defendant left his room and found Chu sitting in the doorway to his room, saying, "I'm dying. I'm dying." Li came out of her room and defendant asked her to call the police, which she refused to do. Defendant then went downstairs to a bar where there was a pay phone. Since somebody was on the phone, he returned and saw a group of people around Chu. When somebody said that the owner of the building had been called, defendant went to his room. Five or ten minutes later, defendant left his room, passed by Chu's body and went to a restaurant down the street.

On cross-examination defendant admitted he got drunk and began to "behave bad" at the restaurant. He hit his hand and elbow on a cigarette machine. Although he admitted kicking the police car when he was arrested, he denied that he tried to kick out its window. On rebuttal, Officer Maginniss stated that when he placed defendant under arrest he was raving and screaming to the point where he was actually resisting arrest. The police officer described defendant's conduct as "violent, scary behavior."

## II. *Aggravated Mayhem*

Defendant was convicted of aggravated mayhem in violation of section 205, which provides: "A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body. For purposes of this section, it is not necessary to prove an intent to kill. Aggravated mayhem is a felony punishable by imprisonment in the state prison for life with the possibility of parole." ▓▓ Defendant contends the evidence was insufficient to establish the specific intent element of this offense. We agree.

▓▓ We recently explained in *People* v. *Ferrell* (1990) 218 Cal.App.3d 828 [267 Cal.Rptr. 283] that aggravated mayhem is a specific intent offense, the specific intent to cause the maiming injury being an element of the

crime. (*Id.*, at p. 833.) As in the present case, the question in *Ferrell* was the sufficiency of the evidence to establish that specific intent. We first noted the general rule that specific intent may be inferred from the circumstances attending an act, the manner in which it is done, and the means used, among other factors. (*Id.*, at p. 834, citing *People v. Miller* (1977) 18 Cal.3d 873, 884 [135 Cal.Rptr. 654, 558 P.2d 552].) For more precise guidance in assessing the evidence, we also looked to cases involving felony-murder with simple mayhem in violation of section 203 as the predicate felony; in such cases the specific intent to commit mayhem must be proved, even though a violation of section 203 is otherwise a general intent crime.[3] (*People v. Ferrell, supra*, at pp. 834-835; see *People v. Anderson* (1965) 63 Cal.2d 351, 358-359 [46 Cal.Rptr. 763, 406 P.2d 43]; *People v. Sears* (1965) 62 Cal.2d 737, 744-745 [44 Cal.Rptr. 330, 401 P.2d 938]; *People v. Campbell* (1987) 193 Cal.App.3d 1653, 1668 [239 Cal.Rptr. 214].)

Those cases indicate that evidence which shows no more than an " 'indiscriminate attack' " on the body of the victim is insufficient to prove the specific intent to commit mayhem under section 203. In addition, that specific intent cannot be inferred solely from evidence that the injury inflicted constitutes mayhem; instead, there must be other facts and circumstances which give rise to an inference of intent to maim rather than attack indiscriminately. (*People v. Ferrell, supra,* 218 Cal.App.3d at p. 835.)

For example, in *Sears*, defendant killed his young stepdaughter during a violent attack on his estranged wife. Defendant struck the child several times with a steel pipe, lacerating her nose and lip; she also had a scalp wound and a knife wound which punctured her jugular vein. (*People v. Sears, supra,* 62 Cal.2d at pp. 741, 745.) The court held that evidence only indicated an "indiscriminate attack," and was not sufficient to establish that defendant specifically intended to maim his victim. (*Id.*, at p. 745.) In *Anderson,* the victim was killed during an apparent "explosion of violence." (*People v. Anderson, supra,* 63 Cal.2d at p. 360.) The evidence that she had over 60 stab wounds and superficial cuts ranging over her entire body, from her head to her extremities, also showed an indiscriminate attack, not the specific intent to maim. (*Id.,* at p. 356.)

In contrast, in *Campbell,* another felony-murder mayhem case, a jealous lover inflicted about 25 nonlife-threatening punctures to the left side of his girlfriend's face with a screwdriver. He also battered the right side of her

---

[3] We considered those cases instructive but also recognized that the injuries described in section 203 are more narrowly and precisely defined than those in section 205. Section 203 provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

head and face with a cinder block brick, extensively tearing her right ear. The court concluded this evidence was sufficient to establish specific intent to maim. "The facts indicate [defendant] limited the amount of force he used with the screwdriver rather than stabbing with his full force, and limited the scope of the attack with the brick to the head and face, rather than randomly attacking [the victim's] body. The controlled and directed nature of the attack supports an inference [defendant] intended to disfigure [the victim's] face, including her right ear." (*People* v. *Campbell, supra*, 193 Cal.App.3d at pp. 1668-1669, fn. omitted.)

 Guided by the foregoing authority, we evaluated the evidence of defendant's intent in *Ferrell*. Defendant in that case was a stranger to her victim, but came looking for her by name, stating that she had been sent by a friend from jail. Defendant pointed her gun at her victim's mother and threatened to kill her. When the victim's father moved toward defendant, she calmly and deliberately lowered her aim and shot him in the knee. Defendant then turned and shot her victim once in the neck. Once her victim was down, defendant did not fire additional shots. As a result of her injury, the victim was permanently partially paralyzed, and we noted that it takes no special expertise to know that a shot to the neck from close range, if not fatal, is highly likely to disable permanently. The evidence did not show an indiscriminate random attack on the victim's body or an explosion of violence such as that at issue in *Sears* or *Anderson*; instead, the attack was directed, controlled, and of focused or limited scope. (*People* v. *Ferrell, supra*, 218 Cal.App.3d at pp. 835-836.) To summarize, in *Ferrell*, after considering the circumstances attending defendant's act, the manner in which it was done, and the means used, we held that the evidence was sufficient to support the jury's determination that defendant intended to disable her victim permanently.

Consideration of those factors does not lead to the same conclusion in the present case. Defendant here did not shoot or stab his victim; instead, he used his fists and his feet. Defendant punched his victim in the face three times. Defendant also kicked his victim at least twice somewhere on his body, but there was no evidence that the kicks were to his head. The evidence shows no more than a sudden, indiscriminate, and unfocused battering of Chu's body. While this evidence undoubtedly shows extreme indifference to Chu's physical well-being, it does not show a controlled, directed, limited attack similar to that in either *Campbell* or *Ferrell*, from which a jury could reasonably have inferred that defendant specifically intended to disable Chu permanently.

Absent substantial evidence of the requisite intent, the conviction of aggravated mayhem must be reversed. Retrial on this count is barred by the

double jeopardy clause. (*People* v. *Trevino* (1985) 39 Cal.3d 667, 699 [217 Cal.Rptr. 652, 704 P.2d 719]; *People* v. *Belton* (1979) 23 Cal.3d 516, 527, and fn. 13 [153 Cal.Rptr. 195, 591 P.2d 485].)

### III.-VI.*

. . . . . . . . . . . . . . . . . . . . . . .

### VII. *CALJIC No. 2.02*

■ Defendant requested CALJIC Nos. 2.01 (sufficiency of circumstantial evidence generally) and 2.02 (sufficiency of circumstantial evidence and specific intent).[5] The court instructed with CALJIC No. 2.01, but not CALJIC No. 2.02. Because defendant now acknowledges that he was not entitled to both instructions (see *People* v. *Bloyd* (1987) 43 Cal.3d 333, 352 [233 Cal.Rptr. 368, 729 P.2d 802]), we understand his argument to be that the jury should have been instructed with CALJIC No. 2.02 instead of CALJIC No. 2.01.

It is unnecessary to address this issue with respect to the charges for aggravated mayhem and mayhem. Simple mayhem is not a specific intent crime, and we have already concluded that the aggravated mayhem conviction must be reversed. Thus the question is the effect of the omission on the enhancement allegation for the section 245, subdivision (a)(1), charge.

First, we disagree with the People's argument that the instruction was not required because this case was substantially a direct evidence case. Nevertheless, the correctness of jury instructions must be determined from all of the instructions given, not from a consideration of parts of an instruction or from a particular instruction. The absence of a critical element in one instruction may be supplied by another or cured by the instructions as a

---

* See footnote, *ante,* page 320.

[5] CALJIC No. 2.02 provides: "The [specific intent] [or] [mental state] with which an act is done may be shown by the circumstances surrounding the commission of the act. But you may not find the defendant guilty of the offense charged [in Count(s) __, __, __and __], unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required [specific intent] [or] [mental state] but (2) cannot be reconciled with any other rational conclusion.

"Also, if the evidence as to [any] such [specific intent] [or] [mental state] is susceptible of two reasonable interpretations, one of which points to the existence of the [specific intent] [or] [mental state] and the other to the absence of the [specific intent] [or] [mental state], you must adopt that interpretation which points to the absence of the [specific intent] [or] [mental state]. If, on the other hand, one interpretation of the evidence as to such [specific intent] [or] [mental state] appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."

whole. (*People* v. *Burgener* (1986) 41 Cal.3d 505, 538-539 [224 Cal.Rptr. 112, 714 P.2d 1251].)

Here, the court told the jury to consider the instructions as a whole and in light of each other. It explained direct and circumstantial evidence. (CALJIC No. 2.00.) It gave the general sufficiency of circumstantial evidence instruction. (CALJIC No. 2.01.) That instruction emphasizes that if the circumstantial evidence as to any count is susceptible of two reasonable interpretations, the jury must adopt that interpretation pointing to the defendant's innocence and rejecting that which points to his guilt. On the allegation of intentional infliction of great bodily injury, the court twice instructed that the specific intent to inflict such injury was required.[6] Read together, the instructions both cautioned the jury on the inferences to be drawn from any circumstantial evidence presented in the case and stressed the specific intent requirement. Under these circumstances, it is not reasonably probable that giving CALJIC No. 2.01 instead of CALJIC No. 2.02 confused or misled the jury, or that a result more favorable to appellant would have resulted had the one been given instead of the other. (See *People* v. *Bloyd, supra,* 43 Cal.3d at pp. 351-352; *People* v. *Watson* [(1956)] 46 Cal.2d [818] at p. 837.)

*People* v. *Salas* (1976) 58 Cal.App.3d 460 [129 Cal.Rptr. 871], upon which defendant relies, does not compel the conclusion that reversal of the enhancement finding is required. In *Salas,* defendant was convicted of robbery and an intentional infliction of great bodily injury enhancement was found true. The jury was instructed on circumstantial evidence, but the version of CALJIC No. 2.02 given dealt *only* with the specific intent required to prove robbery. (*Id.,* at p. 474.) The appellate court held that limiting that instruction to robbery and not repeating the same instruction as applied to the enhancement was prejudicial error, as the inconsistency may have confused the jury about what was required to prove the enhancement. (*Id.,* at pp. 473-475.) Unlike *Salas,* this case does not involve confusing or conflicting instructions.

VIII., IX.*

. . . . . . . . . . . . . . . . . . .

---

[6] First, the court instructed the jury, "The specific intent required is included in the definitions of the crimes or allegations charged. [¶] And the allegation of intentional infliction of great bodily injury section 12022.7 requires the specific intent to inflict such injury." Later, the court instructed, "You must determine whether or not such defendant with the specific intent to inflict such injury did personally inflict great bodily injury on Wing Sak Chu in the commission or attempted commission of those crimes."

* See footnote, *ante,* page 320.

## X. *Disposition*

The conviction of aggravated mayhem (count 2) is reversed and the trial court is directed to enter a judgment of acquittal on this count. The matter is remanded for resentencing consistent with the requirements of Penal Code section 654. In all other respects the judgment is affirmed.

Barry-Deal, J., concurred.

**WHITE, P. J.**—I concur with that portion of the judgment which holds there was insufficient evidence to support a conviction for aggravated mayhem. However, I dissent to the holding that the failure to instruct pursuant to CALJIC No. 2.02 was nonprejudicial.

If proof of specific intent to inflict great bodily injury rests on circumstantial evidence, the jury must be instructed pursuant to CALJIC No. 2.02. (*People* v. *Salas* (1976) 58 Cal.App.3d 460, 474 [129 Cal.Rptr. 871]; Com. to CALJIC No. 2.02 (5th ed. 1988) p. 26.) Consideration of the instructions as a whole does not cure the omission of CALJIC No. 2.02 in this case.

In the instant action it is difficult to understand defendant's aberrant behavior. The victim could not explain why defendant assaulted him; nor is it clear whether defendant's conduct resulted from intoxication. The mere fact that somebody punches or kicks another, without more, is insufficient to warrant a finding that the assailant harbored the specific intent to inflict great bodily injury. As the Attorney General acknowledges, defendant's query in Cantonese, "Are you dying?," was subject to various translations, including "Are you dead yet?" and "Are you okay?"

During deliberations the jury indicated they were having difficulty with the specific intent analysis. After one day of deliberation the jury asked for clarification of the instruction on specific intent to find somebody guilty of burglary. The trial court instructed that they had to have specific intent beyond a reasonable doubt, but limited the instruction to the specific intent to commit larceny necessary for a burglary conviction. One juror then noted: "We have read over several pages again and again and we are having a little bit of difficulty with when specific intent begins." After the judge stated that he could not further clarify the point, another juror asked: "How do you find intentions?" The question was not answered. The jury returned to deliberate and 10 minutes later returned their verdicts that defendant was guilty of aggravated mayhem, mayhem, intent to commit great bodily injury, but not burglary.

Although the jury's inquiry regarding specific intent was limited to the burglary charge, it is clear from the above the jurors were having difficulty

with the concept of specific intent generally. They were unable to find specific intent for the burglary charge; yet they found specific intent to commit aggravated mayhem when, as we have decided, there was neither direct nor circumstantial evidence to support such a finding. I am therefore unpersuaded by that too-oft employed bromide that failure to give a correct instruction may be cured by viewing the instructions as a whole. Under the circumstances of this case it cannot be said the jury would have not rendered a more favorable verdict on the great bodily injury allegation had they been properly instructed. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

A petition for a rehearing was denied June 13, 1990.