[No. B156250. Second Dist., Div. Four. Sept. 18, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID HO PARK, Defendant and Appellant.

62

**COUNSEL**

Law Offices of Dennis A. Fischer, Dennis A. Fischer and John M. Bishop for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson and Pamela C. Hamanaka, Assistant Attorneys General, Scott A. Taryle and Karen Bissonnette, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

VOGEL (C.S.), P. J.—

## INTRODUCTION

A jury convicted defendant David Ho Park of aggravated mayhem, assault with a deadly weapon by means likely to produce great bodily injury, and attempting by fraud to persuade a witness to give false material information to the police. In regard to the first two offenses, the jury found true the allegations defendant had personally used a deadly and dangerous weapon and had inflicted great bodily injury.

On this appeal, defendant raises only one contention. In regard to his conviction for aggravated mayhem, he urges there is insufficient evidence that he had, as required by law, the specific intent to maim the victim. He therefore asks us, pursuant to Penal Code section 1260,[1] to modify the conviction to one for (simple) mayhem and to remand for a new sentencing hearing. We disagree. We conclude a reasonable trier of fact could have found beyond a reasonable doubt defendant had the specific intent to maim and therefore affirm the judgment.

## LEGAL AND FACTUAL BACKGROUND

Because defendant's appeal only challenges the sufficiency of the evidence to sustain his conviction for aggravated mayhem, we omit recitation of the evidence relating to the other crimes for which he was convicted. [2] We begin with an explanation of the law governing the difference between (simple) mayhem and aggravated mayhem. Next we set forth the evidence offered on mayhem. We then summarize the pertinent jury instructions, the parties' theories of the case as set forth in their closing arguments, and an exchange between the court and the jury regarding a further clarification of the law.

---

[1] Penal Code section 1260 provides, in pertinent part: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, . . . and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

[2] Defendant's opening brief contains a five-page recitation of the evidence offered to establish he attempted through the use of fraud to induce a witness to give false information to the police. Although defendant makes no assignment of error in regard to his conviction for that offense, he claims this evidence is relevant because "the identity of [the victim's] assailant was sharply contested at trial and that contest was closely related to the facts underlying" the witness tampering charge. Because defendant does not challenge the sufficiency of the evidence to establish he was the assailant, we omit any discussion of the evidence offered on that point, including the evidence related to the charge of witness tampering.

*Legal Background*

Mayhem is defined in section 203.[3] The statute, enacted in 1872, provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

Aggravated mayhem is defined in section 205. The statute, enacted in 1987, provides: "A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body. For purposes of this section, it is not necessary to prove an intent to kill."

■ There are two key differences between the crimes: the required intent and the potential sentence.

■ Mayhem is a general intent crime. (*People v. Sekona* (1994) 27 Cal.App.4th 443, 453 [32 Cal.Rptr.2d 606].) "The necessary intent for mayhem is inferable from the types of injuries resulting from intentional acts. [Citations.] Thus, the crime is mayhem if the blow results in putting out the eye even if the person who unlawfully strikes another does not have the specific intent to commit the offense. [Citations.]" (*Ibid.*)

■ Aggravated mayhem, on the other hand, requires the specific intent to cause the maiming injury. (*People v. Ferrell* (1990) 218 Cal.App.3d 828, 833 [267 Cal.Rptr. 283], citing legislative history of the statute.) Evidence that shows no more than an "indiscriminate attack" is insufficient to prove the required specific intent. (*Id.* at p. 835.) "Furthermore, specific intent to maim may not be inferred solely from evidence that the injury inflicted actually constitutes mayhem; instead, there must be other facts and circumstances which support an inference of intent to maim rather than to attack indiscriminately. [Citation.]" (*Ibid.*)

The sentence for aggravated mayhem is significantly greater than that for mayhem. Aggravated mayhem is punishable by life imprisonment with the possibility of parole (§ 205) while mayhem is punishable by two, four, or eight years in state prison (§ 204).

---

[3] All undesignated statutory references are to the Penal Code.

*Trial Evidence*

The crimes occurred at approximately 3:00 a.m. at the Western Pho Restaurant in the City of Los Angeles. The victim, Ja Won Lee (Ja),[4] was eating with friends when defendant came to the restaurant with several companions. Defendants' group sat down next to the victim's party. Defendant's group looked at Ja's group in an unfriendly or threatening way. The two groups engaged in an "out-staring fight."

Ja's group finished eating, stood up, and warned defendant's group to "watch out [their] back[s]." Ja's group left the restaurant and went to the parking lot to smoke. Defendant appeared to be very angry. Defendant walked to the rear of the restaurant and obtained a long steel knife sharpener with a black handle.[5] Defendant, armed with this weapon, walked out of the front of the restaurant and entered the parking lot. Defendant was soon joined by his companions. Defendant asked Ja's group: "Where you from?" and also stated: "I'm from K.P."[6] Ja neither replied nor moved. Defendant drew the steel knife sharpener from behind his head and brought the weapon forward over his shoulder in a throwing motion. Ja believed defendant intended to hit him in the head. Ja held his arm in front of his face to protect himself. Defendant hit Ja's arm three or four times with the weapon as Ja attempted to block the blow. With a final blow, defendant hit Ja in the mouth with the weapon. This last blow broke eight of Ja's teeth and caused profuse bleeding. Defendant said: "This is K.P., mother-fucker." This attack upon Ja forms the basis of defendant's conviction for aggravated mayhem.

A fight then occurred between defendant's group and Ja's group. A security guard broke up the fight. Defendant and his companions fled before the police arrived.

Defendant did not testify or present any defense witnesses.

*Jury Instructions*

Because the information charged defendant both with aggravated mayhem (count 1) and mayhem (count 2) based upon the one attack on Ja, the jury

---

[4] The briefs of both defendant and the Attorney General refer to the victim by his first name, Ja. For purposes of clarity and consistency, we will also follow that approach.

[5] Pursuant to rules 12(a) and 33(a)(3) of the California Rules of Court, we augmented the record on appeal to include the steel knife sharpener. The weapon had been entered into evidence as People's exhibit # 2 after Ja identified it as the item defendant had used to attack him. The knife sharpener is 19 inches long, including a 14-inch shaft, and weighs 15.9 ounces.

[6] In closing argument, defense counsel mentioned that "K.P." stood for "Korean Pride," a gang name.

was instructed: "The defendant may not be found guilty of both Counts 1 and 2" and "The crime of mayhem as charged in Count 2 is lesser to that of aggravated mayhem charged in Count 1. [¶] Thus you are to determine whether the defendant is guilty or not guilty of the crime charged in Count 1 or of the lesser crime charged in Count 2." The standard instructions defining aggravated mayhem (CALJIC No. 9.32) and mayhem (CALJIC No. 9.30) were also submitted.

*Closing Arguments*

Both counsel identified the primary issue as identification: Was defendant the person who attacked Ja? (See also fn. 2, *ante.*) In fact, this was the sole issue defense counsel addressed; he never argued the issue of aggravated mayhem versus mayhem.[7] However, the prosecutor addressed at length the difference between mayhem and aggravated mayhem. In particular, he stated "[i]n aggravated mayhem, the specific intent that is required is that there is an intent to disfigure or disable" whereas "[s]imple mayhem requires that the defendant unlawfully used physical force on the victim causing permanent disfigurement or disability . . . and that he did it maliciously, with an intent to vex, annoy or injure. This is a general intent crime. There is no requirement that there is this specific intent to injure."

The prosecutor then argued:

"Okay, let's talk about the specific intent to disfigure or disable. [Defendant] arms himself with this (indicating) [the steel knife sharpener] before he goes outside. . . . It was more than just wanting to fight. It was wanting to injure. Remember, [defendant's] group outnumbered the other group. . . . [Defendant's] group had four men versus three men. If he wanted to just fight it out, skin to skin, he clearly could have done that. He would have—his group would have been in the majority. But he had to have an even greater advantage. He had to have this metal bar. He asks [Ja] 'Where you from' before he attacks. 'Where you from?' That's a challenge. And, unfortunately, probably all of us who live in Southern California know what the significance of those words are. It's not asking you 'What is your original country of origin,' it's not asking you 'Where did you go to school,' it's not asking you 'Where do you reside.' It's asking you 'What gang do you claim?' Then [defendant] claims K.P. 'K.P., mother-fucker,' is what he says. Either 'This is K.P.' or 'I'm from K.P.' or 'It's all about K.P.' He's upping the stakes. He's saying 'I'm tough, I'm hard, don't mess with me, man. This is K.P.,' statements by the defendant showing what's in his mind. All the blows are aimed at [Ja's] head. It's not jab, jab. It's not, you know, hey, here we go,

---

[7] This was the same approach defense counsel took in his opening statement.

let's pretend we're fencing. It's at the head. At the head. At the head. We know from looking at the injuries that some of the blows [Ja] was able to block with his left forearm, but, eventually, [defendant] gets through the defense. We know that the force is sufficient to shatter someone's teeth. That is not—tap, tap, tap—it's full force. And again, we talked a little bit about where the blows were directed. A person's head is particularly vulnerable. Yeah, there is bone on the top, but there are soft places at the temple. There are the eyes, which are uniquely vulnerable among human beings. There are the teeth, the ears, the neck, the jaw, the throat. Any one of these areas, if you connect, is going to cause serious injury. You know, you want to hit somebody on the arm. Again, yeah, you may bruise them. If you have really a lot of force, you may be able to break an adult male's arm, but it's a lot harder to do. The same thing with the torso. The head and the genitals are the two places on a human being that are particularly vulnerable, and these blows were all aimed at the head. And that is again evidence of what the defendant intended when he attacked. . . . What we do know is that it was not enough for [defendant] until [Ja] bent over and had blood flowing from his mouth. It was only at that point that [defendant] decided to stop his attack. And that shows you what his intent was. If you keep attacking until you do the serious injury, the natural inference is that that's what you wanted to do. So it's the circumstances, it's what [defendant] said, and it's what he did that I suggest to you shows what was in his mind when he attacked."

*Jury Deliberations and Decision*

During deliberations, the jury sent the following request to the court: "Clarification of specific intent vs. general intent for aggravated mayhem."

The court gave the following correct explanation of the law to the jury:

*"The crime of aggravated mayhem requires that the person who inflicted the injury did so with the specific intent permanently to disable, disfigure, or to deprive the other person of a limb, organ, or member of his body. In other words, the defendant must specifically intend to cause a maiming injury.*

"If you have a reasonable doubt that the defendant had this specific intent, you must find the defendant not guilty of aggravated mayhem.

"Instruction number 3.30 contains the definition of general criminal intent.

*"The specific intent with which an act is done may be shown by the circumstances surrounding the commission of the act*; however, you may not find the defendant guilty of the crimes charged in counts 1 and 4 unless the proved circumstances are not only, one, consistent with the theory that the

defendant had the required specific intent; but, two, cannot be reconciled with any other rational conclusion.

"Also, if the evidence as to any specific intent permits two reasonable interpretations, one of which points to the existence of the specific intent and the other to its absence, you must adopt that interpretation that points to its absence.

"If, on the other hand, one interpretation of the evidence as to the specific intent appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (Italics added.)

As already noted, the jury convicted defendant of aggravated mayhem.

## DISCUSSION

The standard of review is well settled. "An appellate court called upon to review the sufficiency of the evidence supporting a judgment of conviction of a criminal offense must, after a review of the whole record, determine whether the evidence is such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. [Citations.] The standard of appellate review is the same in cases in which the People rely primarily on circumstantial evidence. [Citation.] Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" (*People v. Bean* (1988) 46 Cal.3d 919, 932–933 [251 Cal.Rptr. 467, 760 P.2d 996].)

On this appeal, the dispositive issue is whether there is substantial evidence to support the jury's implied finding he entertained the specific intent to maim Ja.[8] As our Supreme Court has explained, "[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction. [Citations.]" (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698].) In particular, "[a] jury may infer a defendant's specific intent from the circumstances attending the act, the manner in which it is done, and the means used, among other factors." (*People v. Ferrell, supra,* 218 Cal.App.3d 828, 834.)

---

[8] Defendant concedes that the injuries Ja suffered are sufficient to establish aggravated mayhem.

In this case, there are multiple factors which, when taken together, constitute substantial evidence defendant entertained the specific intent to maim Ja.

■ For one thing, defendant's mode of attack demonstrates this was not an indiscriminate attack. He attacked using the steel knife sharpener in a throwing motion by bringing the weapon from behind his head and over his shoulder. This action gave his blows more force and therefore gave him a greater ability to inflict serious injury than if he had simply held the sharpener in front of him and tried to jab or stab Ja. Significantly, defendant aimed at an extremely vulnerable portion of Ja's body: his head. When Ja tried to defend himself by holding his arm in front of his face, defendant did not strike other portions of Ja's body but instead first hit Ja's arm several times to break through this defense and then hit Ja in the mouth. Defendant's limiting the scope of his attack to Ja's head shows this was not an indiscriminate attack but instead was an attack guided by the specific intent of inflicting serious injury upon Ja's head. It is particularly significant that defendant stopped his attack once he had maimed Ja's face: he had accomplished his objective.

To a large extent, this case is analogous to *People v. Campbell* (1987) 193 Cal.App.3d 1653 [239 Cal.Rptr. 214]. There, the defendant hit the victim on one side of her face with a screwdriver and the other side of her face with a brick, resulting in the partial severance of her ear. The issue was whether the defendant specifically intended to tear off the victim's ear or whether he merely intended a general attack upon her. The Court of Appeal found substantial evidence of specific intent. It reasoned: "The attack was focused on [the victim's] face and head. The facts indicate [the defendant] limited the amount of force he used with the screwdriver rather than stabbing with his full force, and limited the scope of the attack with the brick to the head and face, rather than randomly attacking [her] body. *The controlled and directed nature of the attack supports an inference [he] intended to disfigure [the victim's] face, including her right ear.*" (*Id.* at pp. 1668–1669, italics added and fn. omitted.)

Another factor that shows defendant's specific intent is that he planned his attack on Ja following a demonstrated antagonism between the two groups. The first manifestation of animosity was when defendant's group began the "out-staring fight" with Ja's party in the restaurant. Tension escalated when Ja's group made a verbal threat as they left the restaurant. At that point, defendant, although very angry, had the presence of mind to walk to the back of the restaurant, locate and take the knife sharpener, leave the restaurant, find Ja's group, and confront them. After asking a hostile question and stating

his association with "K.P.," defendant, without any verbal or physical provocation, attacked Ja with the knife sharpener. Taken together these circumstances show defendant's attack was the product of deliberation and planning, not an explosion of indiscriminate violence. This, in turn, is further evidence that in attacking Ja with the knife sharpener, defendant had the intent to maim. (See *People v. Ferrell, supra,* 218 Cal.App.3d 828, 835–836 [The defendant's shooting of the victim "was a cold and deliberate attack . . . not an indiscriminate, random attack on her body; instead, the shooting was directed and controlled" so that the jury could have reasonably inferred he entertained the required specific intent to maim].)

Defendant's arguments to the contrary are not persuasive. He relies upon cases in which appellate courts found insufficient evidence of intent to maim. The cases are distinguishable.

In *People v. Sears* (1965) 62 Cal.2d 737 [44 Cal.Rptr. 330, 401 P.2d 938], the defendant broke into the home of his estranged wife and attacked her with a steel pipe. (*Id.* at pp. 740–741.) At that point, the victim's daughter came into the room, told the defendant to leave her mother alone, and tried to place herself between her mother and the defendant. Defendant then hit the girl "several times with a steel pipe; one of the blows resulted in a laceration of the lip; another, a laceration of the nose." (*Id.* at p. 745.) The issue was whether this constituted substantial evidence the defendant intended to maim the girl. Our Supreme Court held it did not. It reasoned: "[S]uch evidence does no more than indicate an indiscriminate attack; it does not support the premise that defendant specifically intended to maim his victim." (*Ibid.*)

This case does not resemble *People v. Sears, supra,* 62 Cal.2d 737. There, the attack on the girl appears to have been serendipitous. It occurred when the girl tried to protect her mother from the defendant. By using the steel pipe on the girl, the defendant did not intend to maim the girl; he apparently only wanted to remove an obstacle to his attack on his intended victim, the mother. Here, in contrast, defendant's attack on Ja was the result of deliberation and planning which, in turn, constitutes circumstantial evidence of defendant's intent to maim.

Defendant next cites *People v. Anderson* (1965) 63 Cal.2d 351 [46 Cal.Rptr. 763, 406 P.2d 43]. There, the defendant was convicted of the first degree murder of a 10-year-old girl. (*Id.* at p. 354.) Defendant was a boarder in the home in which the victim and her family lived. One evening, the victim's brother discovered her body. She had 41 knife wounds on her body and approximately 20 more superficial cuts. Many of the wounds had been inflicted after her death. (*Id.* at p. 356.) There were no witnesses to the crime. One of the prosecution's theories was felony murder committed in the

perpetration of mayhem, a theory which required the prosecution to show an intent to maim. (*Id.* at p. 358.) The Supreme Court found no substantial evidence of the required specific intent. It reasoned: "The evidence does no more than indicate an indiscriminate attack; it cannot independently uphold a verdict based on the precise premise that defendant entertained the specific intent to commit mayhem." (*Id.* at p. 359.)

*People v. Anderson, supra,* 63 Cal.2d 351, is inapposite. In that case, there was no testimony from percipient witnesses about the attack, only evidence of the result of the attack—the inflicted wounds and cuts. Because there was no evidence about how or why the defendant inflicted the particular wounds, there was no evidence to show anything more than an indiscriminate attack. Here, in contrast, there was substantial testimony about defendant's actions and words before he attacked Ja, evidence from which a reasonable jury could infer the specific intent to maim.

Lastly, defendant cites *People v. Lee* (1990) 220 Cal.App.3d 320 [269 Cal.Rptr. 434]. The case involved an unprovoked attack. Both the defendant and the victim were tenants in the same building. One day, the defendant entered the victim's room uninvited, said " 'You know what to do,' " and hit the victim three times in the face with his fist. (*Id.* at p. 323.) Defendant "also kicked his victim at least twice somewhere on his body, but there was no evidence that the kicks were to his head." (*Id.* at p. 326.) In the following analysis, the Court of Appeal found this was insufficient evidence of a specific intent to maim. "The evidence shows no more than a sudden, indiscriminate, and unfocused battering of [the victim's] body. While this evidence undoubtedly shows extreme indifference to [the victim's] physical well-being, it does not show a controlled, directed, limited attack . . . from which a jury could reasonably have inferred that defendant specifically intended to disable [the victim] permanently." (*Ibid.*)

This case is markedly different from *People v. Lee, supra,* 220 Cal.App.3d 320. While *Lee* involved an unprovoked and sudden attack for which the victim could fathom no reason, defendant's attack on Ja was the culmination of an ongoing series of hostile encounters. Furthermore, unlike the attack in *Lee,* defendant's attack upon Ja was neither indiscriminate nor unfocused. It was a directed attempt, ultimately successful, to maim the victim in his face. And most significantly, *Lee* involved an attack of fists and feet, not a steel weapon. The latter is far more likely to inflict a maiming injury than the former. Consequently, defendant's deliberate choice of a steel weapon in lieu of "fists-de-cuff" is further evidence he had the specific intent to maim.

The remainder of defendant's arguments do not warrant an extended discussion. Distilled to their essence, these are arguments more properly

advanced to a jury because in them defendant simply argues inferences favorable to himself from the facts to show he did not have the specific intent to maim. That approach is inapplicable on appeal. "[E]ven though the appellate court may itself believe that the circumstantial evidence might be reasonably reconciled with the defendant's innocence, this alone does not warrant interference with the determination of the trier of fact. [Citations.] Whether the evidence presented at trial is direct or circumstantial, . . . the relevant inquiry on appeal remains whether *any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Towler* (1982) 31 Cal.3d 105, 118 [181 Cal.Rptr. 391, 641 P.2d 1253].) As explained earlier, the record contains substantial evidence from which a reasonable jury guided, as here, by proper instructions on the controlling legal principles could have found beyond a reasonable doubt that defendant had the specific intent to maim.

## DISPOSITION

The judgment is affirmed.

Epstein, J., and Curry, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 10, 2003.