WERDEGAR, J.,
Concurring and Dissenting.—Defendant was driving a car when, with his knowledge and encouragement, one of the passengers, co-defendant Norman Willover, leaned out the passenger side window and sprayed victims Jennifer Aninger and Priya Mathews with bullets, resulting in Mathews’s death and severe and permanent injuries to Aninger. I concur in the majority’s opinion affirming defendant’s convictions of the murder of Mathews and the attempted murder of Aninger. I dissent from that part of the opinion that affirms defendant’s conviction of aggravated mayhem as to Aninger. As I explain, no substantial evidence supports the conclusion that Willover, as required for the offense of aggravated mayhem, acted with the specific intent to inflict on Aninger a permanently disabling or disfiguring injury; likewise, no substantial evidence supports the conclusion that defendant, whose culpability as the nonshooter is premised on his status as Willover’s aider and abettor, specifically intended that Willover inflict a permanently disabling or disfiguring injury on the victim. Because reversal of this one count would not undermine the legitimacy of the other convictions or the imposition of the death penalty, I otherwise concur.
I.
The strength of evidence supporting a criminal charge undergoes three different assessments during legal proceedings, all for the protection of the accused. The evidence is weighed preliminarily by the committing magistrate or, less commonly, by a grand jury if the People proceed by way of an indictment. The critical assessment is then made at trial, usually by a jury unless waived. The jury weighs the evidence, resolves conflicts therein, and evaluates the credibility of witnesses. After the verdict, a defendant may seek further review by filing a motion for a new trial. Thus, by the time the case reaches an appellate court, the strength of the evidence has, in the normal case, been fully evaluated. The majority therefore accurately sets forth the deferential standard of review when an appellate court is confronted with a claim of insufficient evidence. But contrary to the majority’s view, the sufficiency of the evidence is not merely one for the jury. (Maj. opn., ante, at p. 92.) In this case, even applying a deferential standard of review, and viewing the whole record in a light favorable to the judgment and presuming the existence of all facts reasonably deducible from that record, I find an absence of “ ‘ “evidence that is reasonable, credible, and of solid value . . . from which a reasonable trier of fact could find the defendant guilty beyond a *102 reasonable doubt” ’ ” of aggravated mayhem. (People v. Jones (2013) 57 Cal.4th 899, 960 [161 Cal.Rptr.3d 295, 306 P.3d 1136], citing Jackson v. Virginia (1979) 443 U.S. 307, 317-320 [61 L.Ed.2d 560, 99 S.Ct. 2781].) I reach this conclusion because, although the People presented ample evidence that defendant and codefendant Willover acted with a specific intent to kill Aninger, no evidence was presented that they intended to maim her, as that offense is defined in Penal Code section 205. (All further statutory references are to the Penal Code.)
Section 205 states in pertinent part: “A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body. For purposes of this section, it is not necessary to prove an intent to kill.” (Italics added.) In contrast to the crime of simple mayhem in section 203,[1] which is a general intent crime (People v. Villegas (2001) 92 Cal.App.4th 1217, 1226 [113 Cal.Rptr.2d 1]; see People v. Sears (1965) 62 Cal.2d 737, 745 [44 Cal.Rptr. 330, 401 P.2d 938]), “the unambiguous language of section 205 compels the conclusion that the specific intent to cause the maiming injury is an element of aggravated mayhem” (People v. Ferrell (1990) 218 Cal.App.3d 828, 833 [267 Cal.Rptr. 283]; see People v. Assad (2010) 189 Cal.App.4th 187, 195 [116 Cal.Rptr.3d 699] [“Aggravated mayhem requires the specific intent to cause the maiming injury.”]). I do not read the majority opinion to say otherwise, and consider the issue of the intent requirement for aggravated mayhem to be one of settled law. (See 1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against the Person, § 90, pp. 878-879 [aggravated mayhem requires specific intent to inflict a maiming injury].)
Although I agree Aninger’s injuries are sufficient to qualify as permanently disabling or disfiguring, that such maiming injuries resulted from the attack is not itself sufficient evidence to prove that Willover (and hence, defendant) specifically intended to inflict injuries of that type. (People v. Assad, supra, 189 Cal.App.4th at p. 195; People v. Park (2003) 112 Cal.App.4th 61, 64 [4 Cal.Rptr.3d 815].) Although a controlled and direct attack, or one of focused or limited scope, may be sufficient to demonstrate the specific intent to inflict a maiming injury,[2] it is well established that an indiscriminate attack or *103 explosion of violence is insufficient to prove the specific intent to inflict a permanently disabling or disfiguring injury.
This court addressed the issue almost 50 years ago in two cases involving felony murder based on the crime of simple mayhem. In People v. Sears, supra, 62 Cal.2d 737,[3] the defendant was charged with first degree murder on a felony-minder theory based on the commission of mayhem. As this court explained, although the crime of simple mayhem is a general intent crime, reliance on that felony to elevate a killing to.first degree murder required proof the defendant had specifically intended to inflict a maiming injury. (62 Cal.2d at p. 744.) Turning then to the facts of that case, this court observed that “the evidence discloses that defendant struck [the victim] several times with a steel pipe; one of the blows resulted in a laceration of the lip; another, a laceration of the nose. But such evidence does no more than indicate an indiscriminate attack; it does not support the premise that defendant specifically intended to maim his victim. In the absence of such a showing of specific intent to commit mayhem, the court should not give the jury an instruction on felony murder mayhem.” (Id., at p. 745, italics added.)
We followed Sears' s holding later that same year in People v. Anderson (1965) 63 Cal.2d 351 [46 Cal.Rptr. 763, 406 P.2d 43], In that case, evidence demonstrated the defendant inflicted over 60 stab wounds on the body of the victim, the 10-year-old daughter of his cohabitant. Forty-one of the wounds were significant, including lacerations of the lung that the autopsy report cited as the cause of death. (Id., at p. 356.) The prosecution suggested the defendant, drunk and sexually aroused, tried to molest the victim and, when rebuffed, killed her to silence her. (Id., at p. 357.) Defendant was convicted of first degree murder on four theories, one of which was murder in the perpetration of mayhem. (Ibid.)
Speaking to whether evidence of this theory was sufficient to justify appropriate jury instructions, this court found the trial court erred by instructing the jury on felony murder mayhem because “no substantial evidence supports a finding that defendant specifically intended to commit mayhem.” (People v. Anderson, supra, 63 Cal.2d at p. 358.) “To establish a felony-murder, the prosecution must prove that the defendant specifically intended to
*104 commit the felony. [Citations.] Yet the record here does not disclose substantial evidence showing a specific intent to commit mayhem. The evidence does no more than indicate an indiscriminate attack, it cannot independently uphold a verdict based on the precise premise that defendant entertained the specific intent to commit mayhem. Thus, as we said in People v. Sears, supra, [62 Cal.2d] at p[age] 745, ‘In the absence of such a showing of specific intent to commit mayhem, the court should not give the jury an instruction on felony murder mayhem.’ ” (Id., at pp. 358-359, italics added.)
More-recent cases have cited Anderson and Sears with approval. (People v. Assad, supra, 189 Cal.App.4th at p. 195; People v. Lee (1990) 220 Cal.App.3d 320, 325 [269 Cal.Rptr. 434]; People v. Ferrell, supra, 218 Cal.App.3d at p. 835; see People v. Gonzales (2011) 51 Cal.4th 894, 941 [126 Cal.Rptr.3d 1, 253 P.3d 185] [recognizing the rule in the context of felony murder mayhem]; People v. Kelly (1990) 51 Cal.3d 931, 957 [275 Cal.Rptr. 160, 800 P.2d 516] [acknowledging the rule]; People v. Park, supra, 112 Cal.App.4th at p. 64 [same].)
The majority rejects the applicability of this established authority, and instead posits several possible alternative scenarios to suggest Willover and defendant may have acted with the specific intent to inflict a permanently disabling or disfiguring injury on Aninger: that this was a targeted attack, that Willover aimed at a specific body part from close range, that Willover and defendant desired to eliminate any witnesses, and that they shot the victims for their own sadistic pleasure. These theories are of questionable validity. That Willover (and hence defendant) “targeted” Aninger is a given, in that the jury found he intended to kill her, but such targeting does not raise an inference that he also specifically intended to maim her. Similarly, that he desired to eliminate witnesses supports an inference that he intended to kill but says nothing about whether he acted with an intent to maim. Certainly that Willover and defendant shot Aninger for sadistic pleasure does not logically raise an inference that they intended to maim. In essence, what the majority opinion comes down to is that the fact Aninger was shot once in the face and once in her upper arm, which is near her face, of itself “can support an inference of an intent to cause permanent disability or disfigurement.” (Maj. opn., ante, at p. 88.) I disagree.
The mental component, or mens rea, of the crime of aggravated mayhem is the specific intent to inflict a permanent disabling or disfiguring injury on the victim. That is, it is the intent to inflict a grievous injury but allow the victim to live. The history of the law illustrates this point. “First codified in 1850, the crime of mayhem originated in the English common law. [Citations.] The early common law crime of mayhem prohibited a person from dismembering or disabling another person, causing ‘an injury which substantially reduced *105 the victim’s formidability in combat.’ [Citations.] Though not displacing the common law definition, England’s Coventry Act, enacted in 1670, later expanded the crime of mayhem to include ‘mere disfigurement without an attendant reduction in fighting ability,’ if the injury was intentionally inflicted.” (People v. Santana, supra, 56 Cal.4th at p. 1003.) Although the crime of simple mayhem in section 203 “contains ‘verbal vestiges’ of the common law and the Coventry Act of 1670, ‘ “the modem rationale of the crime may be said to be the preservation of the natural completeness and normal appearance of the human face and body, and not, as originally, the preservation of the sovereign’s right to the effective military assistance of his subjects.” ’ [Citations.] In other words, section 203 ‘protects the integrity of the victim’s person.’ ” (Santana, supra, at p. 1004.)
This history of the common law crime of mayhem (which is codified in § 203) provides content for the required mental element applicable to the statutory crime of aggravated mayhem (§ 205). Sections 203 and 205 are in pari materia and thus should be read together; indeed, both address the crime of mayhem, an older form of the word “maim” (People v. Keenan (1991) 227 Cal.App.3d 26, 33 [277 Cal.Rptr. 687]), which means “to disable, wound, cause bodily hurt or disfigurement to. Subsequently: to deprive of (the use of) a limb, etc.; to mutilate; to cripple.” (Oxford English Diet. Online (2013) <http://www.oed.com> [as of Dec. 2, 2013].) Because the list of maiming injuries in section 203 (“cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip”) all describe an injury short of death, the phrase “permanent disability or disfigurement,” as used in section 205, should be read in that light. That section 205 expressly disclaims the necessity for proving intent to kill is telling, for the key distinguishing feature of mayhem versus homicide is the assailant’s intention that his victim should not die of the injuries, but should live with the emotional and physical pain of disability or disfigurement. Thus, despite the prosecutor’s argument to the jury in this case[4] and the majority’s stated analysis,[5] an intent to kill may not, absent unusual facts not present here,[6] logically substitute for an intent to maim, *106 because intending to kill someone presupposes an intention that the victim will die and thus will not survive the attack and suffer living with the ensuing disability or disfigurement.
In short, the majority points to no evidence that is “ ‘ “reasonable, credible, and of solid value” ’ ” (People v. Jones, supra, 57 Cal.4th at p. 960) from which the jury could have found beyond a reasonable doubt that when Willover shot Aninger, he and defendant entertained the contradictory objectives that Aninger should die and that she also should live while suffering a permanently disabling or disfiguring injury.
My concern is that the majority’s analysis will inject confusion into the law where none before existed. If, as the majority reasons, the same fact that can support an intent to kill—i.e., that the victim was shot in the head—“can support an inference of an intent to cause permanent disability or disfigurement” (maj. opn., ante, at p. 88), many cases of attempted murder will, as a logical matter, also involve aggravated mayhem, raising the question of whether the trial court is obligated to deliver jury instructions on the other crime. Further, future cases involving a planned and deliberate, albeit indiscriminate, attack on a victim can now be elevated to one of aggravated mayhem, despite the clear line of authority dating back to People v. Sears, supra, 62 Cal.2d 737, and People v. Anderson, supra, 63 Cal.2d 351, that such attacks lack the intent required to prove that crime.
n.
I thus dissent from the majority’s decision to affirm defendant’s conviction for aggravated mayhem. I concur in the majority opinion in all other respects, including the decision to affirm the penalty judgment, as it is not reasonably possible the jury would have returned a more favorable penalty verdict in the absence of the error. (People v. Kraft (2000) 23 Cal.4th 978, 1060 [99 Cal.Rptr.2d 1, 5 P.3d 68]; People v. Brown (1988) 46 Cal.3d 432, 448 [250 Cal.Rptr. 604, 758 P.2d 1135] [“when faced with penalty phase error not amounting to a federal constitutional violation, we will affirm the judgment unless we conclude there is a reasonable (i.e., realistic) possibility that the jury would have rendered a different verdict had the error or errors not occurred”].)
Liu, 1, concurred.

 Section 203 provides: “Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem.”

 See People v. Santana (2013) 56 Cal.4th 999 [157 Cal.Rptr.3d 547, 301 P.3d 1157] (three focused gunshots from close range into the victim’s leg and buttocks sufficient to prove intent to inflict a maiming injury); People v. Quintero (2006) 135 Cal.App.4th 1152, 1162 [37 *103 Cal.Rptr.3d 884] (intentionally inflicting deep cuts to victim’s face sufficient to show specific intent to maim); People v. Park, supra, 112 Cal.App.4th 61, 65 (bludgeoning victim’s head and mouth with a steel knife sharpener, stopping once the victim had lost several teeth, sufficient to show specific intent to disfigure); People v. Campbell (1987) 193 Cal.App.3d 1653 [239 Cal.Rptr. 214] (striking victim with a screwdriver and brick on the face and head, stopping once her ear was partially severed, sufficient to indicate specific intent to inflict a maiming injury).

 People v. Sears was overruled on another ground in People v. Cahill (1993) 5 Cal.4th 478, 509-510, footnote 17 [20 Cal.Rptr.2d 582, 853 P.2d 1037].

 He argued: “If you repeatedly shoot a pistol into another person’s body at close range, specific intent to commit the crime of aggravated mayhem has been proved. If the person dies, you are guilty of murder. If the person manages to live . . . you are guilty of aggravated mayhem.”

 The majority reasons: “In prior decisions, we have held that the fact the victim was shot in the head can support an inference of an intent to kill. [Citations.] We now find that the same fact can support an inference of an intent to cause permanent disability or disfigurement.” (Maj. opn., ante, at p. 88.)

 Although unusual, a person can simultaneously entertain logically contradictory mental states. For example, in People v. D’Arcy (2010) 48 Cal.4th 257 [106 Cal.Rptr.3d 459, 226 P.3d 949], the defendant killed the victim by dousing her with gasoline and lighting her on fire. We upheld the defendant’s conviction for first degree murder on a felony murder mayhem theory, noting that “the evidence showed that [the] defendant had concurrent intents to maim and *106 murder [the victim].” (Id., at p. 297.) That evidence showed the defendant told a witness: “ ‘I’m not going to kill her. I just want to [light her on fire].’ ” (Ibid.) But he later told the same witness that he was “ ‘going to kill’ ” the victim. (Ibid.) On the state of the evidence in D’Arcy, it was for the jury to decide whether the defendant held one, the other, or both intents when he committed the crime. No such evidence is present in this case.