Filed 6/30/21  P. v. Jackson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. BRONSHI MAURICE JACKSON, Defendant and Appellant. | F079700 (Super. Ct. No. CRF52955) **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Matthew J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Hill, P.J., Franson, J. and DeSantos, J.

Defendant Bronshi Maurice Jackson was convicted by jury trial of battery by a prisoner of a nonconfined person after he spit on a correctional officer. On appeal, he contends there was insufficient evidence to support his conviction. We affirm.

## PROCEDURAL SUMMARY

On March 30, 2017, the Tuolumne County District Attorney filed an information charging defendant with battery by a prisoner of a nonconfined person (Pen. Code, § 4501.5;[1] count 1). The complaint further alleged defendant had suffered a prior strike conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). Defendant pled not guilty and denied the prior strike allegation.

On February 7, 2019, a jury found defendant guilty of count 1. In a bifurcated proceeding, defendant admitted the prior strike allegation.

The trial court sentenced defendant to eight years in state prison as follows: three years, doubled to six years pursuant to the Three Strikes law, plus two consecutive years imposed in another case.

On July 25, 2019, defendant filed a notice of appeal.

## FACTUAL SUMMARY

On February 17, 2017, Correctional Officer Ralph Hansen was working at Sierra Conservation Center as a health care escort officer, escorting inmates to health appointments. That morning, Hansen attempted to escort defendant to a doctor's appointment. After Hansen handcuffed defendant and removed him from his cell, defendant refused to see the doctor. Hansen put defendant back in his cell, but defendant refused to let him remove the handcuffs. He told Hansen that he was not going to return them and began yelling profanities. Hansen then notified a sergeant. When the sergeant approached defendant's cell, defendant began kicking at the door. He stated that he had been there too long and wanted to kill himself.

---

[1] All statutory references are to the Penal Code.

As a result of defendant's statement, Hansen transferred him to a holding cell for observation. The holding cell was approximately three feet by three feet, six or seven feet tall, and covered in diamond mesh screen. According to Hansen, as he secured the holding cell door, defendant became aggressive and began kicking. He yelled at Hansen, " 'Fuck you, old man,' " and then spit through the wire mesh, striking him in the face and chest. Defendant and Hansen were standing face-to-face, approximately one foot away from each other when defendant spit on Hansen. Afterwards, Hansen wiped his right check with the right sleeve of his uniform shirt. He immediately reported the incident to the sergeant. He then wiped some of the spit off with a paper towel and took off his uniform shirt. An officer took photos of Hansen's uniform. After being photographed, Hansen went to the bathroom and washed his face. An officer then transported him to the hospital.

Correctional Officer Byron Gardner was nearby when the incident occurred. He testified that he heard Hansen say, " 'He spit on me.' " Gardner was a couple of steps away from Hansen, but did not actually see or hear defendant spit on him. Gardner then retrieved a camera and took pictures of the spit. Additionally, he attempted to soak up some of the spit with a paper towel, which was eventually booked into evidence.

Correctional Officer Dustin Duke was also working on the day of the incident. He was notified that Hansen had been spit on by an inmate and was instructed to collect and process the evidence. He said he saw spit marks on the left shoulder and right sleeve of Hansen's uniform shirt. The spit appeared fresh and had a "whitish appearance" and had begun to absorb into the material. He made circles around the spit marks with a black marker and took three photos.

John Styer, a criminalist for the Department of Justice, tested Hansen's uniform shirt and a brown paper towel for saliva. Both results came back inconclusive for saliva, but positive for alpha-amylase, a substance found in saliva and other bodily fluids. He also found the presence of nucleated epithelial cells, which are generally found inside of

3.

the mouth or other bodily orifices. Styer testified that the presence of alpha-amylase in high amounts and nucleated epithelial cells indicated there was an "extremely high probability" that the substance found on both items was saliva.

Defendant testified on his own behalf. He denied spitting on Hansen. He said, "That's total disrespect and that's like an assault charge on a [correctional officer], I know that much." He noted that he was 30 days away from being paroled and would not have risked his release date to spit on an officer.

## DISCUSSION

Defendant contends there was insufficient evidence to support his conviction because the only evidence available was Hansen's "bald assertion" that defendant spit on him. We conclude the evidence was sufficient.

### I.      Applicable Law

#### A.      Sufficiency of the Evidence Standards

In reviewing the sufficiency of the evidence, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009), 46 Cal.4th 913, 919.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*Cravens*, at p. 508.) The reviewing court "neither reweigh[s] the evidence nor reevaluate[s] the credibility of the witnesses." (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521.) "[C]ircumstantial evidence is as sufficient as direct evidence to support a conviction. (*People v. Park* (2003) 112 Cal.App.4th 61, 68.) The standard of review is the same in cases in which a conviction is based primarily on circumstantial evidence. (*People v. Clark* (2016) 63 Cal.4th 522,

625.)  Moreover, " '[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable.' "  (*People v. Duncan* (2008) 160 Cal.App.4th 1014, 1018.)

### B.    Battery by a Prisoner of a Nonconfined Person

Pursuant to section 4501.5, "[e]very person confined in a state prison of this state who commits a battery upon the person of any individual who is not himself a person confined therein shall be guilty of a felony and shall be imprisoned in the state prison for two, three, or four years, to be served consecutively."  To prove that the defendant is guilty of this crime, the prosecution must therefore prove that (1) the defendant willfully touched the victim in a harmful or offensive manner, (2) the defendant was confined in a state prison, and (3) the victim was not confined in a state prison.  (*People v. Flores* (2009) 176 Cal.App.4th 924, 930–931; CALCRIM No. 2723.)

In regard to the first element, "the touching can be done indirectly by causing an object to touch the other person, and … the slightest touching can constitute a battery." (*People v. Flores*, *supra*, 176 Cal.App.4th at p. 931.)  "The act of placing or throwing human bodily fluids or excrement, or a substance containing either bodily fluids or excrement, thereby causing such substance to contact the skin or membrane of the employee, also is harmful or offensive touching."  (*Ibid*.)  Additionally, the touching must have been willful.  (*Ibid*.)  Willful means "a purpose or willingness to commit the act, or make the omission referred to.  It does not require any intent to violate law, or to injure another, or to acquire any advantage."  (§ 7, subd. (1).)

## II.    Analysis

Defendant's argument that the only evidence that he spit on Hansen was Hansen's "unsupported assertion" is contradicted by the testimony of multiple officers and the criminologist, which provided ample support and corroboration for Hansen's assertion. Furthermore, the testimony of Hansen alone would have constituted sufficient evidence, unless it was physically impossible or inherently improbable.  (See *People v. Duncan*,

*supra*, 160 Cal.App.4th at p. 1018.)  "To reject the statements given by a witness whom the trial court has found credible, either they must be physically impossible or their falsity must be apparent without resorting to inferences or deductions."  (*Ibid*.)

Here, there was nothing impossible or improbable about any of the witnesses' testimony.  Hansen testified that when defendant was in a mesh-screened holding cell, defendant spit on him through the screen, striking him on the face and chest.  They were standing face-to-face, approximately one foot away from each other when it occurred. Gardner, who was standing nearby, heard Hansen say, "He spit on me."  Although Gardner did not see defendant spit on Hansen, he did see the spit on Hansen's shirt afterwards, took photos of the spit approximately a minute later, and even attempted to soak some of it up with a paper towel.  Duke also saw spit marks on the left shoulder and right sleeve of Hansen's shirt.  He said the spit appeared fresh and he took three photos of it.

Additionally, the conviction was supported by forensic evidence.  Styer tested Hansen's shirt and the brown paper towel used to wipe the spit off.  Although the results came back inconclusive for saliva, both items tested positive for alpha-amylase and nucleated epithelial cells, which indicated an "extremely high probability" that the substance found on Hansen's shirt and the paper towel was saliva.

Defendant argues that this forensic evidence created only a "mere possibility" the substance on the shirt and paper towel was saliva because alpha-amylase is also found in sweat and other bodily fluids.  However, as noted, Styer testified there was an "extremely high probability" that the substance was indeed saliva because he found high levels of alpha-amylase and "the presence of alpha-amylase in saliva is approximately a thousand times higher than amylase in any other of the bodily fluids."  This was sufficient to support an inference the substance on Hansen's shirt was saliva.  (See *People v. Park*, *supra*, 112 Cal.App.4th at p. 68 [" 'circumstantial evidence is as sufficient as direct evidence to support a conviction' "]; *People v. Bellamy* (1986) 109 Cal. 610, 611

6.

[circumstantial evidence need not provide "an absolute and mathematical demonstration of guilt"].)

In any event, even without this corroborating circumstantial evidence, Hansen was an eyewitness to the fact that defendant spit on his face and shirt, and his testimony alone constituted substantial evidence. In sum, the evidence supporting the conviction was overwhelming.

## **DISPOSITION**

The judgment is affirmed.