Filed 3/1/22  P. v. Rivas CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ROBERT DANIEL RIVAS,<br><br>      Defendant and Appellant. | A164271<br><br><br><br>(Kern County<br>Super. Ct. No. BF173704A) |

A jury convicted Robert Daniel Rivas of multiple crimes after he attacked two victims with a machete.[1]  He asserts that his conviction for aggravated mayhem (Pen. Code, § 205)[2] must be reversed for insufficient evidence, and he argues that the trial court erred in returning an initial set of verdict forms to the jury after determining they were irregular.  We reject both contentions and affirm the judgment.

---

[1] This matter was transferred by California Supreme Court Order on December 20, 2021 from the Fifth Appellate District (No. F080845) to the First Appellate District.

[2] Undesignated statutory references are to the Penal Code.

1

## BACKGROUND

### A.

After learning that his ex-girlfriend, G., was becoming romantically involved with another man, Rivas broke into the apartment where she was staying and tried to attack her with a machete. When she fled the apartment, Rivas followed her into a nearby Starbucks shop, where he struck her repeatedly with the machete. The attack on G. ended when a good Samaritan named B. intervened. G. and B. each sustained multiple injuries.

### B.

An amended information charged Rivas with aggravated mayhem (§ 205; counts four (G.) and six (B.)). In addition, the amended information charged him with first degree burglary with another person present (§§ 460, subd. (a), 667.5, subd. (c)(21); count one), assault with a deadly weapon (§ 245, subd. (a)(1); counts two (G.) and nine (B.)); attempted murder (§§ 187, subd. (a), 664; counts three (G.) and five (B.)); infliction of corporal injury (§ 273.5, subd. (a); count seven (G.)); and resisting arrest (§ 148, subd. (a)(1); count eight). The amended information alleged that Rivas personally used a deadly or dangerous weapon (§ 12022, subd. (b)(1)) in relation to counts one, three, five, and seven; and that he inflicted great bodily injury (§ 12022.7, subds. (a), (e)) as to counts three, five, and nine.

The jury initially returned a set of verdict forms that the court determined were improperly filled out. The court informed the jury: "I'm going to send you back just to review it in certain areas so I don't - - we don't misinterpret what you put on the verdict form."[3]

---

[3] Although the initial verdict forms are sealed, by order of this court Rivas has been provided with information about the

After resuming deliberations, the jury ultimately found Rivas guilty of assault with a deadly weapon (counts two and nine); attempted voluntary manslaughter (§§ 192, subd. (a), 664) as to G., a lesser included offense of attempted murder (count three); aggravated mayhem as to G. (count four); mayhem (§ 203), a lesser included offense of aggravated mayhem, as to B. (count six); infliction of corporal injury as to G. (count seven); and resisting arrest (count eight). The jury found true the enhancements for great bodily injury and personal use of a deadly or dangerous weapon. In addition, the jury found Rivas not guilty of burglary and attempted murder as to B. (counts one and five).

## DISCUSSION

### A.

Rivas contends that his conviction for aggravated mayhem (§ 205; count four) is unsupported by substantial evidence. We disagree.

We review the entire record in the light most favorable to the judgment below and may reverse "only if ' "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " ' " the judgment. (*People v. Sanford* (2017) 11 Cal.App.5th 84, 91 (*Sanford*).) Substantial evidence is evidence that is " 'solid, substantial, and . . . reasonably inspire[s] confidence' " that the accused committed the charged crime. (*People v. Lara* (2017) 9 Cal.App.5th 296, 320.) We " ' "presume in support of the judgment the existence of every fact the [fact finder] could reasonably have deduced from the evidence." ' " (*Sanford*, *supra*, at p. 91.)

A conviction for aggravated mayhem "requires proof the defendant specifically intended to maim—to cause a permanent

---

contents of the forms and an opportunity to raise any related claims.

disability or disfigurement." (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 831 (*Szadziewicz*), disapproved on another ground in *People v. Dalton* (2019) 7 Cal.5th 166, 214.) A jury may not find a specific intent to maim based only on evidence that the victim actually suffered a permanent injury; " ' instead, there must be other facts and circumstances which support an inference of intent to maim rather than to attack indiscriminately.' " (*Szadziewicz*, *supra*, at p. 831.) The jury may infer a specific intent to maim from factors including " ' the circumstances attending the act, the manner in which it is done, and the means used[.]' " (*Ibid.*) For example, evidence of a focused, controlled, or directed attack may provide substantial evidence of the requisite specific intent. (*Ibid.*)

Rivas argues that the evidence demonstrated an unfocused or indiscriminate attack on G. rather than a controlled and directed one. However, there was sufficient evidence from which a rational jury could infer that Rivas had a specific intent to maim G. To begin with, his decision to use a 16-inch long machete (that curves to a point, with a serrated edge on the back side) in the attack supports such an inference. (Cf. *People v. Assad* (2010) 189 Cal.App.4th 187, 195-196 ["Any reasonable person would know that repeatedly striking a person's body with the metal fitting of a hose and placing a burning hot knife against the person's skin would likely cause permanent disfigurement"].)

Further, the jury could reasonably conclude that the attack was focused on G.'s right leg, where she suffered four separate injuries and required surgery. According to an officer who administered first aid at the Starbucks, G.'s leg was where most of the blood was coming from, and he had to apply a tourniquet. The jury viewed photographs showing a gash that ran the length of G.'s right thigh, from her upper thigh to her knee, which required approximately 32 staples to close. Photographs also showed a hole in her right leg that was approximately two inches

long and one inch wide; G. was left with this open wound, which apparently could not be stitched or stapled, for about three months. In addition, she suffered two other wounds to her right leg, including one that was approximately two inches long and required approximately 12 staples to close. G. testified that as a result of these injuries, she no longer had full use of her right leg and foot and had to use a brace and an ankle or foot monitor to assist her when walking. Although G. also suffered smaller cuts on her arms, hand, chest, abdomen, and back, the jury could reasonably infer that Rivas intended to maim her leg but inflicted the other cuts because she put her arms out and grabbed the machete to protect herself and struggled to get away. (See *Szadziewicz, supra*, 161 Cal.App.4th at pp. 831-832 [finding substantial evidence that defendant had an intent to maim because he focused his attack on the victim's face and neck even though defendant also cut the victim's hand, hip, and chest when victim resisted].)

Other evidence supported a conclusion that this was a calm, calculated, and deliberate attack rather than a random explosion of violence. (*See People v. Ferrell* (1990) 218 Cal.App.3d 828, 835-836 [finding substantial evidence of intent to disable the victim permanently where the defendant acted "calmly and deliberately" during the attack]; *People v. Park* (2003) 112 Cal.App.4th 61, 69-70 [finding substantial evidence that the defendant had an intent to maim where, inter alia, defendant had a motive for the attack and had the presence of mind to follow his victims to a second location].) Upset that G. was romantically involved with someone else, Rivas began the attack at the apartment, where he first tried to cut her. When G. ran from the apartment, he stood there for a few seconds and then walked out. After Rivas arrived at the Starbucks, he walked into the store in pursuit of G., again not running. G. testified that during the attack, they spoke to one another, Rivas was "cool," and he took the time to count down "five, four, three." After the

5

attack, he walked out of the Starbucks at a leisurely pace. In sum, substantial evidence supported the aggravated mayhem conviction.

**B.**

Rivas contends that the guilty verdict on count six (the lesser included offense of mayhem (§ 203) and the true findings on the enhancements (§§ 12022.7, subd. (e), 12022, subd. (b)(1)) for count three (the lesser included offense of attempted voluntary manslaughter as to G. (§§ 192, subd. (a), 664)) must be reversed because the trial court violated section 1161 in returning the initial set of verdict forms to the jury. However, we conclude that the court's actions were consistent with section 1161.

Section 1161 prohibits a court from asking the jury to reconsider a verdict of acquittal. It provides that "[w]hen there is a verdict of conviction, in which it appears to the Court that the jury have mistaken the law, the Court may explain the reason for that opinion and direct the jury to reconsider their verdict . . . but when there is a verdict of acquittal, the Court cannot require the jury to reconsider it." When the jury's verdict is ambiguous or unintelligible, however, the court may return the verdict to the jury. (*People v. Carbajal* (2013) 56 Cal.4th 521, 532 (*Carbajal*).) In such circumstances, "asking the jury to clarify its verdict d[oes] not contravene" the statute "because it [i]s not possible to understand whether the jury ha[s] actually convicted or acquitted the defendant of the specified counts. Clarification [i]s necessary to determine whether there [i]s an intelligible verdict at all." (*Ibid.*)

Here, although Rivas contends that "in effect" the jury initially acquitted him of mayhem in count six and returned "not true" findings for the enhancements on count three, we conclude that the trial court properly returned the initial verdicts on these counts because they were ambiguous and unintelligible.

6

With respect to count six, the lesser included offense of mayhem, the record reflects that the jury foreperson signed on the signature line for "guilty," but the signature was crossed out. The jury left the signature line for "not guilty" blank. Similarly, with respect to both enhancements for the lesser included offense on count three, the jury foreperson signed on the line under "true," but a line was drawn through each signature. The jury left the signature lines for "not true" blank for both enhancements.

Thus, the initial verdict forms indicate that the jury voided the "guilty" and "true" verdicts. (Cf. *People v. Brown* (2016) 247 Cal.App.4th 211, 229 ["[t]he jury's act of crossing out the date and signature and writing 'withdrawl [*sic*]' and 'void' in large letters across the face of the form" acted to void the verdict choice].) However, since the "not guilty" and "not true" signature lines were also blank, the initial verdict forms did not indicate whether the jury intended to return "not guilty" or "not true" verdicts. Neither did the jury inform the court that it had deadlocked on these counts, instead telling the court it had reached a verdict.[4] Because it was not possible to determine the jury's intent under these circumstances, the court did not err in seeking clarification. For the same reason, we reject Rivas's argument that the court violated his constitutional rights when it returned the initial verdicts.

We need not reach Rivas's remaining arguments.

## DISPOSITION

The judgment is affirmed.

---

[4] The court had instructed the jury that if "all of you cannot agree on a verdict for the lesser crime, complete and sign the verdict form for not guilty of the greater crime and inform me only that you cannot reach an agreement about the lesser crime."

_____
BURNS, J.

We concur:


_____
JACKSON, P.J.


_____
SIMONS, J.


A164271