Filed 8/8/25  P. v. Daniels CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099927 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE004616) |
| v. | |
| MICHAEL LAMONT DANIELS, | |
| Defendant and Appellant. | |

A jury convicted defendant Michael Lamont Daniels of attempted murder, aggravated mayhem, and mayhem.  On appeal defendant claims there is insufficient evidence of (1) deliberation and premeditation, as to the attempted murder charge, and (2) specific intent to maim, as to the aggravated mayhem charge.  We conclude that substantial evidence supports both convictions.  Alternatively, defendant claims the conviction for mayhem should be reversed because it is a lesser included offense of aggravated mayhem.  The People concede the conviction for mayhem should be reversed. We agree that the convictions for both aggravated mayhem and mayhem were improper and therefore reverse the mayhem conviction.  We otherwise affirm the judgment.

1

## BACKGROUND

Defendant was at a gas station convenience store when he began arguing and fighting with the victim. The fight stopped temporarily, but shortly after the victim left the convenience store defendant followed him to an adjacent auto body shop, where he slashed the victim's face with a machete and repeatedly punched him. Security cameras in the convenience store, outside the gas station, and at the auto body shop captured the entire incident.

The security camera footage showed the victim, K.W.,[1] and defendant exchange heated words while defendant waited in line to check out at the convenience store. K.W. approached defendant as the two continued to talk. While standing face-to-face defendant threw a punch at the victim, and they began to fight.

The convenience store clerk did not hear what defendant and K.W. said to each other, but observed that they appeared to be mutually aggressive. The convenience store clerk told them to leave the store. While outside, the two separated, and defendant walked to his car. K.W. returned to the convenience store. Defendant looked back at the convenience store, took off his jacket, and drove away after less than a minute as K.W. left the store.

K.W. left the convenience store and walked to an adjacent auto body shop parking lot when defendant's car appeared and stopped. Defendant got out of his car with two machetes. Defendant swung the machetes at K.W.'s head and chased him. As defendant gave chase, he dropped one of his machetes, and K.W. fell to the ground. Defendant stood over K.W. and struck him 11 times with the machete as the victim lay on the ground. Defendant admitted at trial that he struck the victim multiple times with the machete. Defendant also admitted he punched and kicked the victim. After the attack,

---

[1]     To protect his privacy, we refer to the victim by his initials. (Cal. Rules of Court, rule 8.90 (b)(4).)

2

defendant ran back to his car, picked up the second machete from the ground, and fled the scene.

An ambulance transported the victim to a hospital. K.W.'s nose was almost entirely severed. He suffered multiple cuts on his face and head that required stitches; several cuts and broken bones on his left hand, arm, and shoulder; and a cut on his right arm.

Sacramento County Sheriff Deputy Marcus Ziegler interviewed K.W. at the hospital. He said the victim explained that he and defendant had argued and fought in the convenience store, but K.W. did not remember what caused the fight. K.W. told Deputy Ziegler he was planning to climb the fence of the auto body shop parking lot to get to his girlfriend's house, when a white car approached him in the parking lot. After attacking K.W., the victim told Deputy Ziegler defendant said, "[t]hat's what you get for fucking with a killer." K.W. was able to identify defendant in a photo lineup.

Five days later, Roseville Police Officer Chase Fathy received a notification defendant's car was entering Roseville. When Officer Fathy located defendant's car, defendant was sitting inside. Officer Fathy arrested defendant and turned the vehicle over to the Sacramento County Sheriff's Department.

Defendant testified that the victim instigated the fight by asking defendant "[D]o you know who the fuck I am?" and "don't be running up on me. I'll beat your ass." He admitted to punching the victim and stated he did so because he was scared K.W. was going to hit him. Once outside of the convenience store, defendant said K.W. threatened to kill him. After he and K.W. separated, defendant walked to his car and took off his jacket because he was "hot" from the fight inside the convenience store.

Defendant testified that he decided to exit the gas station through the auto body shop parking lot because it allowed him to make a left turn toward his house, which the main exit from the gas station prevented. Upon driving through the parking lot K.W. "popped up in front" of defendant's car. Defendant testified that he "blacked out," from

3

anger, grabbed the machetes, and ran after the victim. He said, "at first" he intended to merely scare the victim, but conceded he was in a rage and "completely out of control" as he swung "blindly" and "wildly" at the victim. Defendant claimed that he never intended to kill K.W. or cut his nose off, but admitted he was "just trying to hit him anywhere towards the body." He testified that he did not "really know what really happened until [he had] seen the video, because [he] was just so mad and enraged." He further testified he was in a fit of rage and "didn't really know what [he] was doing" because he didn't have control of himself.

In 2023, an amended information charged defendant with attempted willful, deliberate, and premeditated murder (Pen. Code,[2] §§ 664/187, subd. (a)—count one), assault with a deadly weapon (§ 245, subd. (a)(1)—count two), aggravated mayhem (§ 205—count three), and mayhem (§ 203—count four). It further alleged defendant personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)), as to the attempted murder and assault counts.

The jury found defendant guilty of all counts and found true the enhancement that defendant personally used a deadly and dangerous weapon and inflicted great bodily injury on the victim. The trial court sentenced defendant to an indeterminate term of life plus four years on the attempted murder count. Pursuant to section 654, the trial court imposed and stayed terms on the remaining counts.

DISCUSSION

Defendant challenges the sufficiency of the evidence supporting his convictions for attempted murder and aggravated mayhem.

---

[2]     Further undesignated section references are to the Penal Code.

4

A. *Standard of Review*

In reviewing the sufficiency of the evidence to support a criminal conviction, we review the record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) We do not reweigh the evidence or reevaluate the credibility of witnesses, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*Ibid.*) A judgment will be reversed only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 484.) Under this standard, the defendant bears an "enormous burden" in demonstrating that the evidence was insufficient to support a conviction. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.)

B. *Attempted Murder*

Defendant argues there is not sufficient evidence of premeditation and deliberation, as to the attempted murder charge.

In *People v. Anderson* (1968) 70 Cal.2d 15, 26-27, our Supreme Court identified three categories of evidence that are typically sufficient to sustain a finding of premeditation and deliberation: (1) planning evidence; (2) motive evidence; and (3) a manner of killing from which the jury could reasonably infer a deliberate intent to kill. These factors need not be present in "some special combination" or "accorded a particular weight" (*People v. Pride* (1992) 3 Cal.4th 195, 247), and "it is not essential that there be evidence of each category to sustain a conviction" (*People v. Gonzalez* (2012) 210 Cal.App.4th 875, 887; see also *People v. Whisenhunt* (2008) 44 Cal.4th 174, 202 ["[T]he *Anderson* factors are simply an aid for the reviewing court, and an '[u]nreflective reliance' on *People v. Anderson* is inappropriate"]). That said, "[w]hen

the record discloses evidence in all three categories, the verdict generally will be sustained." (*People v. Proctor* (1992) 4 Cal.4th 499, 529.)

Premeditation and deliberation do not require an extended period of time. (*People v. Houston* (2012) 54 Cal.4th 1186, 1216.) " 'The true test . . . is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.' " (*Ibid*.) " '[U]se of a lethal weapon with lethal force' against the victim, if otherwise legally unexcused, will itself give rise to an inference of intent to kill." (*People v. Smith* (2005) 37 Cal.4th 733, 742.)

Applying these principles to the facts, and viewing the evidence in the light most favorable to the People, presuming the existence of every fact the jury could reasonably deduce from the evidence in support of the judgment, we conclude the evidence is sufficient to support defendant's conviction of the attempted murder of K.W.

Regarding planning, after defendant and K.W. separated in the parking lot of the gas station, defendant waited by his car for nearly a minute and looked back at the convenience store where K.W. had returned. When K.W. walked out of the convenience store defendant got into his car without purchasing gas and drove to the adjacent autobody shop parking lot, pulling right in front of the victim. Both machetes were in the backseat of defendant's car and within defendant's reach. A reasonable jury could infer defendant had ample time to plan as he watched the victim leave the convenience store and pursued the victim to the adjacent autobody shop, before grabbing both machetes and exiting the car to attack the victim.

The jury could have construed defendant's motive to kill from the fight that occurred with the victim minutes before defendant's violent attack. (*People v. Anderson, supra*, 70 Cal.2d at p. 27.) It was plausible for the jury to infer defendant's motive because of the escalation of his actions. In the convenience store, he verbally confronted the victim while waiting in line, and he started the initial fight. About a minute after the fight, defendant followed the victim in his car before grabbing his machetes, chasing

6

down, and brutally attacking the victim. After the attack, defendant told the victim, "[t]hat's what you get for fucking with a killer," further implying a murderous intent.

The evidence of the manner of the attack also supports a finding of premeditation and deliberation. Defendant took off his jacket, presumably to prepare for the attack. Defendant watched the victim leave the convenience store, followed him in his car, and ambushed him in an empty parking lot. Defendant began his attack by swinging the machetes at K.W.'s head. Once the victim was on the ground, defendant struck and slashed K.W.'s face, shoulder, arms, and hands several times with the machete. He also punched the victim in the head and then continued to slash him with the machete. The violent nature of the attack, which targeted a vulnerable body part, the head, supports a reasonable inference of a premeditated and deliberate intent to kill. We conclude a reasonable jury could have returned a guilty verdict on a willful, deliberate, and premeditated killing theory of attempted murder.

C.    *Aggravated Mayhem*

Defendant also argues that defendant's attack on the victim was indiscriminate, and that no reasonable juror could have found defendant acted with the specific intent to maim the victim. We disagree. Defendant contends he cannot harbor both the intent to maim and to kill, citing to Justice Werdegar's dissent in *People v. Manibusan* (2013) 58 Cal.4th 40, 104 (conc. & dis. opn. of Werdegar, J.). We are bound to follow the majority in *Manibusan,* which held that the defendant's act of shooting a victim in the head could support an "intent to kill" and "an intent to cause permanent disability or disfigurement." (*Id.* at p. 88.)

An aggravated mayhem conviction requires proof that a defendant "intentionally and unlawfully caused another person to sustain permanent disability or disfigurement." (§ 205; *People v. Ferrell* (1990) 218 Cal.App.3d 828, 833.) Aggravated mayhem is "a specific intent crime" (*People v. Manibusan, supra*, 58 Cal.4th at p. 44), which requires "the specific intent to cause the maiming injury. [Citations.] 'Evidence that shows no

7

more than an "indiscriminate attack" is insufficient to prove the required specific intent.' [Citations.] . . . 'Furthermore, specific intent to maim may not be inferred solely from evidence that the injury inflicted actually constitutes mayhem; instead, there must be other facts and circumstances which support an inference of intent to maim rather than to attack indiscriminately.' " (*People v. Assad* (2010) 189 Cal.App.4th 187, 195.) "[E]vidence of a 'controlled and directed' attack or an attack of 'focused or limited scope' may provide substantial evidence of such specific intent." (*People v. Quintero,* (2006) 135 Cal.App.4th 1152, 1162, abrogated on other grounds by *People v. Poisson* (2016) 246 Cal.App.4th 121.)

Defendant initially swung both machetes at K.W.'s head, dropped one machete, and chased the victim until he fell to the ground. While K.W. was on the ground, defendant repeatedly slashed the victim's face and head with the machete. It was reasonable for the jury to infer a specific intent to maim, based on the attack being aimed at K.W.'s head. (*People v. Park* (2003) 112 Cal.App.4th 61, 69 [an attack aimed at the head infers a limited scope attack with intent to maim]; *People v. Campbell* (1987) 193 Cal.App.3d 1653 [same].) When K.W. tried to block defendant's blows, defendant punched him several times in the head, causing K.W. to lower the arm that he used to attempt to block defendant's machete strikes. This allowed defendant to slash the victim's face with the machete. (*Park, supra*, 112 Cal.App.4th at p. 69 ["When [the victim] tried to defend himself by holding his arm in front of his face, defendant did not strike other portions of [the victim's] body but instead first hit [the victim's] arm several times to break through this defense and then hit [the victim] in the mouth"].)

Contrary to defendant's argument that this was an indiscriminate attack, the evidence reflects that he deliberately attacked K.W. Defendant and K.W. fought, defendant waited for K.W. to leave the convenience store, and then attacked him with a machete. As K.W. tried to block the blows from the machete, defendant hit K.W. to lower his defenses and then continued to slash his face with the machete. When he was

8

done, he told K.W. "[t]hat's what you get for fucking with a killer."  It is reasonable for the jury to infer from those facts that this was a deliberate attack against K.W., not an indiscriminate one.  The record contains substantial evidence from which a reasonable jury could have found beyond a reasonable doubt that defendant had the specific intent to maim.

### D. *Mayhem Conviction*

The parties agree that defendant's mayhem conviction must be reversed because it is a necessarily included lesser offense of the aggravated mayhem count.  We concur.

Defendant cannot receive multiple convictions based on necessarily included offenses.  (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034; accord, *People v. Aranda* (2019) 6 Cal.5th 1077, 1089.)  If "a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed."  (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)

Here, the jury convicted defendant of aggravated mayhem and mayhem, which is the lesser included offense.  This was improper.  As such, the conviction for mayhem must be reversed.

## DISPOSITION

Defendant's mayhem conviction is reversed, in all other aspects, the judgment is affirmed. The trial court is directed to amend the abstract of judgment to reflect the reversal of the mayhem conviction and to forward a certified copy to the Department of Corrections and Rehabilitation.

\s\ ,
Krause, J.

We concur:

\s\ ,
Earl, P. J.

\s\ ,
Mesiwala, J.