Filed 10/14/24  P.v. Mears CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY ROBERT MEARS,<br><br>  Defendant and Appellant. | 2d Crim. No. B333490<br>(Super. Ct. No. BA503765)<br>(Los Angeles County) |

Timothy Mears appeals the judgment after a jury convicted him of attempted murder (Pen. Code,[1] §§ 664, 187; count 1), simple mayhem (§ 203; count 2), assault with a deadly weapon (§ 245, subd. (a)(1); count 3), and aggravated mayhem (§ 205; count 4).  The jury also found true the allegations that he personally used a deadly weapon (§ 12022, subd. (b)(1)) for counts 1 and 2 and that he personally inflicted great bodily injury (§ 12022.7) as to counts 1 and 3.  The trial court sentenced him to

---

[1] Further unspecified statutory references are to the Penal Code.

life in prison with the possibility of parole (count 4 as the principal term and stayed counts 1-3 pursuant to § 654).

Mears contends his conviction for aggravated mayhem should be reversed because there was no substantial evidence he intended to maim or disfigure the victim. He also contends, and the Attorney General concedes, the simple mayhem conviction (count 2) should be reversed because it is a lesser included offense of aggravated mayhem (count 4). We modify the judgment to reverse count 2 but otherwise affirm.

FACTUAL AND PROCEDURAL HISTORY

In March 2022, W.Y. was walking on a sidewalk in Los Angeles Chinatown in the afternoon when he encountered Mears. W.Y. and Mears had never met before. Mears and W.Y. made brief eye contact, and Mears was muttering something loudly. Mears put his hands on W.Y.'s shoulders to stop him from walking. When W.Y. tried to go around him, Mears hit W.Y. "a couple of times" on the head. W.Y. felt something piercing his skin on the back of his head and noticed he was bleeding "a lot" from the back and side of the head.

W.Y. tried to restrain Mears by tackling him to the ground. When he tackled him, Mears dropped a knife he was holding. Mears bit W.Y. on his left arm twice while he was restrained. At some point while Mears was still restrained, he picked up the knife and continued to stab W.Y.

A bystander saw Mears attacking W.Y. He described Mears throwing a "big haymaker punch"[2] and then punching W.Y. approximately 10 times. He saw W.Y.'s face and neck were covered in blood and realized Mears was stabbing W.Y. He saw

_____

[2] He explained that a haymaker is a "big, rounded, dramatic punch."

2

W.Y. reach for Mears's hand that was holding the knife to try to stop the stabbing.

An anonymous witness called 911 to report that a man was stabbing another man. The witness said the other man was "trying to hold the guy down so he doesn't stab him anymore." Another bystander recorded on their cell phone a video depicting a portion of the incident, in which the two men were on the ground.

Los Angeles Police Sergeant Janet Kim responded to the scene. As she approached the two men, she observed W.Y. on top of Mears trying to hold him down to the ground. She drew her firearm and ordered the men to stop. When W.Y turned his head to look at Sergeant Kim, Mears "stabbed [W.Y.] in the groin." Sergeant Kim separated the two men and had W.Y. sit down against a wall and had Mears lie on his stomach. Sergeant Kim located a knife next to Mears's right leg by the curb.

Firefighter paramedics arrived on scene to treat W.Y. One paramedic testified that W.Y. stood out because of the amount of slash wounds on him. W.Y. also had one stab wound (a puncture) to the left armpit area. The paramedic was concerned that the stab wound punctured the lung or that the injury could lead to respiratory distress. Another paramedic treated Mears at the scene. He had no slash or stab wounds.

W.Y. was transported to the hospital, where he remained for three or four days. He had a two-inch scar and a half-inch scar below his elbow from Mears's bite. He had multiple lacerations to his head, face, neck, and throat and a stab wound to his shoulder. He also had a wound to his groin area. His neck and face injuries required stitches. The doctors told W.Y. he had

to be circumcised due to his groin injuries, and his penis remains crooked.

The emergency room physician, who treated W.Y., testified that W.Y. suffered multiple lacerations to the left and right side of his face, behind his ear, neck, shoulder, penis, and scrotum. The neck wound required about nine stitches. The physician also testified the lacerations behind the ear and under the jaw required stitches. W.Y.'s "deepest of injuries" was to the back of the shoulder. The physician testified that the injuries, if left untreated, could result in scars and infection.

DISCUSSION

*Aggravated mayhem*

Mears concedes there was sufficient evidence of a permanent disfiguring injury for aggravated mayhem. But he contends the evidence is insufficient to support the jury's finding that he specifically intended to maim or disfigure W.Y, requiring reversal. We are not persuaded.

A person is guilty of aggravated mayhem if the person "unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body." (§ 205.)

Both simple mayhem under section 203 and aggravated mayhem under section 205 require the disfiguring injury be permanent. The difference between simple and aggravated mayhem is the requisite criminal intent. (*People v. Newby* (2008) 167 Cal.App.4th 1341, 1347-1348.) Unlike simple mayhem, which is a general intent crime, aggravated mayhem is a "specific intent crime which requires proof the defendant specifically

4

intended to cause the maiming injury, i.e., the permanent disability or disfigurement. [Citation.] '[S]pecific intent may be inferred from the circumstances attending an act, the manner in which it is done, and the means used, among other factors.' [Citation.] Thus evidence of a 'controlled and directed' attack or an attack of 'focused or limited scope' may provide substantial evidence of such specific intent. [Citation.] However, where the evidence shows no more than an 'indiscriminate' or 'random' attack, or an 'explosion of violence' upon the victim, it is insufficient to prove a specific intent to maim." (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1162 (*Quintero*), overruled on other grounds in *People v. Poisson* (2016) 246 Cal.App.4th 121, 125; see also *People v. Park* (2003) 112 Cal.App.4th 61, 64 (*Park*).) Evidence of " 'a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction. [Citations.]' [Citation.]" (*Park*, at p. 68.)

We review sufficiency of evidence challenges to the judgment of conviction for substantial evidence. Thus, we review the whole record to determine whether the evidence is such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. If the evidence reasonably justifies the trier of fact's finding, we do not reverse even if the evidence might also justify a contrary finding. (*Park*, *supra*, 112 Cal.App.4th at p. 68.) We do not reweigh evidence. The credibility of witnesses and the weight to be accorded to the evidence are exclusively within the province of the trier of fact. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Here, substantial evidence supports the jury's finding that Mears had a specific intent to maim or disfigure W.Y. The attack

5

was mostly directed at a vulnerable area of W.Y.'s body—his head. Several cases have held that similar focused attacks to a victim's head support a specific intent to maim. (See *Park*, *supra*, 112 Cal.App.4th at p. 69 ["Defendant's limiting the scope of his attack to [the victim's] head shows this was not an indiscriminate attack but instead was an attack guided by the specific intent of inflicting serious injury upon [the victim's] head"]; *Quintero*, *supra*, 135 Cal.App.4th at p. 1163 [the defendant used a retractable bladed knife in an uppercut motion to slash the victim's face many times]; *People v. Manibusan* (2013) 58 Cal.4th 40, 88 [gunshots fired in close range hitting in the face and upper arm near the face reasonably supports the inference the defendant focused his attack on the victim's head, which was a particularly vulnerable part of the body]; *People v. Campbell* (1987) 193 Cal.App.3d 1653, 1668-1669 [the focused attack on the victim's face and head, rather than random attacks on the body, was evidence of the defendant's intent to disfigure that area of the victim's body].)

The evidence showed that Mears attacked W.Y.'s head with a knife and slashed him several more times near the head. The jury considered photographs of all W.Y.'s injuries, including the multiple slashes to W.Y.'s head, neck, and shoulder. It also heard the testimony of witnesses, including one bystander who testified regarding the manner of attack and seeing Mears throw a "haymaker" punch to the head. Other witnesses testified regarding the extent of W.Y.'s injuries to his head and neck area. The jury was also able to see W.Y. and the scars on his head when he testified in court. A jury could reasonably conclude from this evidence that Mears intended to disfigure W.Y. based on his manner of attack.

6

Mears compares this case to *People v. Sears* (1965) 62 Cal.2d 737 and *People v. Lee* (1990) 220 Cal.App.3d 320 (*Lee*) to argue that Mears's attacks were indiscriminate and random such that they lacked any specific intent. But those cases are distinguishable. In *Sears*, the defendant began hitting his wife with a steel pipe when her daughter came in between the defendant and her mother. (*Sears*, at p. 741.) The defendant struck the daughter "several times with a steel pipe" with "one of the blows result[ing] in a laceration of the lip; another, a laceration of the nose." (*Id.* at p. 745.) She also suffered a fatal knife wound which punctured her jugular vein. (*Id.* at p. 741.) The court concluded that "such evidence does no more than indicate an indiscriminate attack." (*Id.* at p. 745.) Unlike *Sears*, W.Y. did not intervene in an ongoing attack, but rather, the attack began when Mears started striking W.Y. in the head multiple times. The multiple attacks were mostly targeted near the head area, resulting in lacerations in the face, neck, throat, and a stab wound in the shoulder. Mears later focused his attack on another vulnerable part of W.Y.'s body by stabbing him in the groin.

In *Lee*, *supra*, 220 Cal.App.3d at p. 326, the defendant punched his victim in the face three times and kicked him at least twice somewhere on the body. There was no evidence the kicks were directed at the head. (*Ibid.*) As a result of injury to the head, the victim suffered head trauma and was paralyzed. (*Id.* at p. 323.) The court found the evidence "shows no more than a sudden, indiscriminate, and unfocused battering of [the victim's] body" such that a reasonable jury could not infer the defendant harbored a specific intent to disable the victim. (*Id.* at p. 326.) Unlike *Lee*, the jury had the benefit of reviewing

7

photographs of the injuries and seeing the scars on W.Y. when he testified in court. The jury also heard testimony regarding W.Y.'s account of the attack and his injuries and another witness's description of the attack. The evidence is thus sufficient for a reasonable jury to conclude that Mears harbored an intent to maim or disfigure.

*Count 2*

Mears contends and the Attorney General concedes the simple mayhem conviction (count 2) must be reversed because it is a lesser included offense of the aggravated mayhem conviction (count 4). A defendant may not be convicted of both a greater and a lesser included offense. (*People v. Medina* (2007) 41 Cal.4th 685, 701-702.) The prosecutor argued that Mears was guilty of both simple and aggravated mayhem based on all the same injuries to W.Y. We therefore reverse the conviction on count 2 for simple mayhem. (*Ibid.*)

DISPOSITION

The conviction on count 2 for simple mayhem is reversed. The trial court is directed to prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.

We concur:


GILBERT, P. J.                          YEGAN, J.

8

Henry J. Hall, Judge

Superior Court County of Los Angeles

_____

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.