Filed 11/25/24  P. v. Franco CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>RENE R. FRANCO,<br><br>    Defendant and Appellant. | F085603<br><br>(Super. Ct. No. CR-19-006606)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Matthew J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Ivan P. Marrs and Charlotte Woodfork, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found defendant Rene R. Franco guilty of attempted murder, aggravated mayhem, assault with a deadly weapon, child endangerment, and two counts of false imprisonment.  Defendant was sentenced to 86 years 8 months to life in prison.

Defendant appeals, contending the evidence was insufficient to support his aggravated mayhem and false imprisonment convictions, requiring reversal of these counts. We reject defendant's contentions and affirm.

## PROCEDURAL BACKGROUND

On October 3, 2022, the Stanislaus County District Attorney filed an amended information[1] charging defendant with attempted murder, committed deliberately and with premeditation (Pen. Code,[2] §§ 664, 187, subd. (a); count 1); aggravated mayhem (§ 205; count 2); assault with a deadly weapon (§ 245, subd. (a)(1); count 3); permitting a child to suffer under circumstances likely to cause great bodily injury or death (§ 273a, subd. (a); count 4); and false imprisonment (§ 236; counts 5, 6).

The information alleged an enhancing allegation that defendant personally used a deadly weapon during commission of the crime (§ 12022, subd. (b)(1); counts 1, 2, 4) and another enhancing allegation for personal infliction of great bodily injury (§ 12022.7, subd. (e), counts 1, 3, 4). The information also alleged the following aggravating circumstances: defendant engaged in violent conduct that indicates a serious danger to society (Cal. Rules of Court,[3] rule 4.421(b)(1), counts 1–4); defendant had prior convictions as an adult that were numerous or of increasing seriousness (rule 4.421(b)(2), counts 1–4); defendant served a prior prison term (rule 4.421(b)(3), counts 1–4); the crime involved great violence and great bodily harm (rule 4.421(a)(1), counts 1–4); defendant was armed with or used a weapon at the time of the commission of the crime (rule 4.421(a)(2), counts 1–4); and the victim was particularly vulnerable (rule 4.421(a)(3), counts 2–4). Additionally, the information alleged defendant suffered two

---

[1]     The trial court said the information filed on October 3, 2022, was the "third amended information." It is titled the second amended information. Because it makes no difference here, we refer to it as the amended information.

[2]     All further undesignated statutory references are to the Penal Code.

[3]     All further rule references are to the California Rules of Court.

2.

strike priors within the meaning of the "Three Strikes" law (§ 667, subd. (a), counts 1–4) and as to all counts, the information alleged defendant suffered two prior serious felony convictions. (§§ 667, subd. (d), 1192.7, subd. (c)).

A jury found defendant guilty as charged on all six counts. The jury also found true the enhancements and aggravating circumstances. In a bifurcated proceeding, the trial court found true defendant's two prior convictions (§§ 667, subds. (a), (d)).

The trial court sentenced defendant to 86 years 8 months to life as follows: on count 1, 25 years to life, plus a one-year knife use enhancement (§ 12022, subd. (b)(1)), plus a four-year great bodily injury enhancement (§ 12022.7, subd. (e)), plus two five-year prior serious felony conviction enhancements (§ 667, subd. (a)); on count 2, 25 years to life, plus a one-year knife use enhancement (§ 12022, subd. (b)(1)), plus two five-year prior serious felony conviction enhancements (§ 667, subd. (a)); on count 4, eight years (the middle term, doubled), to run consecutively with the indeterminate terms; on count 5, 16 months (one-third the middle term, doubled), to run consecutively with the term on count 4; on count 6, 16 months (one-third the middle term, doubled), to run consecutively with the term on count 5; and on count 3, 39 years to life, stayed pursuant to section 654.

## FACTUAL BACKGROUND

Defendant and his girlfriend, S.H., walked to the grocery store with S.H.'s five-year-old son, John Doe, around 9:00 p.m. on the night of July 12, 2019.[4] Doe is S.H.'s son from a previous relationship. On the walk back to defendant's residence, defendant got mad at S.H. because her cell phone light was on. The argument was brief and ended before they returned.

At about 10:00 p.m., S.H., Doe, and defendant arrived at defendant's residence and S.H. sat down in a chair. She asked defendant for a cup of orange juice. Defendant

---

[4]  All further dates are in the year 2019, unless otherwise specified.

complied and gave S.H. the orange juice. Then, he started stabbing her. S.H. did not know defendant was stabbing her until Doe started crying and S.H. looked down and saw she was covered in blood. Doe was standing in front of S.H. about three feet away from defendant as he was stabbing her. Defendant stabbed S.H. on her face, neck, breasts, arms, and wrists. S.H. suffered numerous stab wounds all over her body.

After defendant stabbed S.H., he turned to Doe while he was still crying and cut each side of his face. The lacerations began on the corner side of Doe's mouth on both sides and went upward towards his ears.

S.H. stood up after she saw Doe's lacerated face. Doe and S.H. tried to leave defendant's residence, however, defendant blocked the door and prevented S.H. and Doe from exiting. This was the only way out.

S.H. tried to physically move past defendant, but he was blocking the exit, "standing … stiff." About three minutes later, defendant finally moved away from the door. Doe ran out the door first and S.H. walked out after him. Doe screamed and cried for help. A neighbor found S.H. and Doe in an alley and called 911.

Defendant admitted he used the same knife on S.H. to cut Doe.

## DISCUSSION

### I.    Sufficient Evidence of Aggravated Mayhem

Defendant argues the evidence was insufficient to prove aggravated mayhem. He contends there was no evidence or testimony to show his specific intent to maim other than the injury itself. The People respond the witness testimony, photographs, and medical documentation, as well as the nature and circumstances under which defendant inflicted Doe's injuries allowed a reasonable juror to find defendant specifically intended to permanently disfigure Doe. We agree with the People.

#### A.    *Additional Background*

A neighbor who first encountered Doe on the night of July 12 after defendant's attack saw deep lacerations across both sides of his cheeks. The neighbor described the

4.

lacerations to Doe's face as depicting the Joker from the Batman series, from lips to ear, and "so deep."

Doe arrived at the hospital with two 10-centimeter linear lacerations across both sides of his face. Both lacerations started at the corners of Doe's mouth all the way up towards his ears. The lacerations were full thickness, both deep enough to cut through the muscle layer of the cheek.

Sergeant Michael Hicks observed Doe at the hospital on July 12. Hicks said he could see clearly through both sides of Doe's mouth as he talked. Hicks saw Doe's molars in the back of his mouth through the lacerations. Doe's speech was impaired because of the lack of manipulation caused by the lacerations that went through the cheek muscle.

Doe's suturing was very complex. Doe's face had to be closed in multiple layers; the muscle layer had to be closed before the skin layer. It involved a three-layer closure. The suturing also included the vermillion border, where the color of the skin and the color of the lip come together, which creates a very noticeable scar.

A medical doctor opined it would be improbable for a person to have lacerations on both sides of the face from a fall or accident. Lacerations like Doe's, considering the location, size, and deepness, are likely to result in permanent disfigurement. Doe has permanent scarring on his face.

### B. *Analysis*

" 'In reviewing a challenge to the sufficiency of evidence, the reviewing court must determine from the entire record whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt. In making this determination, the reviewing court must consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the [conclusion of the trier of fact], not whether the

5.

evidence proves guilt beyond a reasonable doubt.' " (*People v. Crittenden* (1994) 9 Cal.4th 83, 139.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Regarding a specific intent element of a crime, our Supreme Court held that "[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.) "The standard of review is the same in cases in which the People rely primarily upon circumstantial evidence." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329.)

" '[A] person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 86; § 205.) Aggravated mayhem is a specific intent crime. (*Manibusan*, at p. 86.) Thus, courts ask whether the defendant carried out the attack indiscriminately or to cause a disabling or disfiguring injury. (See *People v. Assad* (2010) 189 Cal.App.4th 187, 195 ["[a]ggravated mayhem requires the specific intent to cause the maiming injury"].) " '[S]pecific intent to maim may not be inferred solely from evidence that the injury inflicted actually constitutes mayhem; instead, there must be other facts and circumstances which support an inference of intent to maim rather than to attack indiscriminately.' " (*People v. Park* (2003) 112 Cal.App.4th 61, 64 (Park).)

In *People v. Campbell* (1987) 193 Cal.App.3d 1653, 1668, the court considered whether the defendant specifically intended to tear off the victim's ear or whether the defendant merely intended a general attack upon the victim to support a felony-murder

mayhem instruction.[5]  There, the defendant hit the victim on one side of her face with a screwdriver and the other side of her face with a brick, resulting in the partial severance of the victim's ear.  (*Ibid*.)  The court held the evidence indicated a controlled and directed attack to the victim's head and face, rather than a random attack to the entire body, and supported an inference that the defendant harbored the specific intent to disfigure the victim's face, including her right ear.  (*Id*. at pp. 1668–1669.)  In *People v. Sears* (1965) 62 Cal.2d 737, 741,[6] the defendant killed his stepdaughter during an attack on his estranged wife.  The defendant struck his estranged wife several times with a steel pipe, resulting in several lacerations to her face, scalp, and arms.  (*Id*. at pp. 741, 745.)  She also suffered from a fractured jaw and arm.  The stepdaughter died as a result of a knife wound on her neck which punctured her jugular vein.  (*Id*. at p. 741.)  The court held the evidence only indicated an "indiscriminate attack," and was not sufficient to establish that the defendant specifically intended to maim his estranged wife.  (*Id*. at p. 745.)

Defendant focused his attack on a particularly vulnerable portion of Doe's body, cutting both sides of Doe's face in a linear fashion that started at the corners of Doe's

---

[5]  The *Campbell* case involved felony murder with simple mayhem prohibited by section 203 as the underlying felony.  We note the specific intent to commit mayhem under section 203 is not identical to the intent required for a violation of section 205.  Section 205 broadly prohibits intentionally causing "permanent disability or disfigurement … or depriv[ing] a human being of a limb, organ, or member of his or her body," while the injuries which are the subject of section 203 are more narrowly and precisely defined.  However, despite the differences in the statutory language, the standards articulated in cases involving felony-murder mayhem are instructive.  (*People v. Ferrell* (1990) 218 Cal.App.3d 828, 835.)  "Evidence which shows no more than an 'indiscriminate attack' is insufficient to prove the specific intent to commit mayhem under section 203."  (*Ibid*.)  Also, there must be other facts and circumstances which support an inference of intent to maim rather than to attack indiscriminately; specific intent may not be inferred solely from evidence that the injury inflicted constitutes mayhem.  (See *People v. Campbell*, *supra*, 193 Cal.App.3d at p. 1668.)

[6]  Overruled on other grounds in *People v. Cahill* (1993) 5 Cal.4th 478.

mouth, through his cheeks, and towards his ears. The lacerations were deep, involved multi-layer suturing, and included the vermillion border. Unlike the indiscriminate assault in *People v. Sears*, *supra*, 62 Cal.2d at p. 745, the circumstances here show defendant guided his attack directly at Doe's face; Doe did not suffer any other physical injuries to his body. A reasonable jury could conclude defendant specifically intended to permanently disfigure Doe by the controlled and directed nature of the attack on Doe's face to support a specific intent to maim. (See, e.g., *Park*, *supra*, 112 Cal.App.4th at p. 69 [evidence the defendant limited the scope of his attack to the victim's head, "an extremely vulnerable portion" of the body, showed this was not an indiscriminate attack but instead an attack guided by the specific intent of inflicting serious injury upon the victim's head].)

In *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1163, the defendant attacked the victim's head, using deliberate, uppercut motions to slash the victim's face many times with a retractable bladed knife, leaving permanent scars and disabilities on the victim's hands and face. The Fourth District found the evidence was sufficient to show specific intent to cause permanent injury to support a conviction for aggravated mayhem. (*Ibid*.) Defendant argues our case is distinguishable due to the statements the victim and the defendant made in *Quintero* regarding the circumstances surrounding the way the defendant cut the victim. Defendant argues since there was no testimony from Doe or other witnesses that described the way defendant cut Doe's face, and only the injury itself, the evidence is insufficient to support his specific intent to maim. We disagree.

The crucial holding in *Quintero* was not focused on the victim and the defendant's statements. (*People v. Quintero*, *supra*, 135 Cal.App.4th at p. 1163.) Rather, the *Quintero* court focused on the evidence which showed the attack was not indiscriminate. (*Ibid*.) The court pointed out that the defendant's attack on the victim was specifically directed at the victim's face and head, particularly vulnerable portions of the victim's

body, leaving the victim with deep cuts and permanent scars, which provided sufficient evidence of the defendant's specific intent to maim. (*Ibid*.)

Here, defendant admitted he "saw blood everywhere" after stabbing S.H. Defendant then used the same knife to cut Doe. However, instead of indiscriminately stabbing Doe like he did S.H., he limited his attack to only Doe's face. (*People v. Lee* (1990) 220 Cal.App.3d 320, 326 [evidence of a "controlled and directed" attack or an attack of "focused or limited scope" may provide substantial evidence of such specific intent].)

Defendant also argues there was no specific intent because the attack on Doe was not prolonged with multiple blows, but a single event. However, the law does not require multiple blows to prove aggravated mayhem. (See *Park*, *supra*, 112 Cal.App.4th at p. 64.) In *People v. Ferrell*, the First District found sufficient evidence to support a conviction for aggravated mayhem when the defendant shot a single bullet at the victim at close range. The court reasoned: "It takes no special expertise to know that a shot in the neck from close range, if not fatal, is highly likely to disable permanently. [The defendant's] shooting of [the victim] was not an indiscriminate, random attack on her body; instead, the shooting was directed and controlled." (*People v. Ferrell*, *supra*, 218 Cal.App.3d at pp. 835–836.)

Finally, defendant argues nothing in the evidence shows he had the specific intent to cause Doe permanent disfigurement that resembled the joker. However, defendant overlooks the fact that he inflicted two linear, 10-centimeter lacerations from the sides of Doe's mouth, through his cheek muscles and towards his ears, that left Doe with permanent scarring. Once Doe was disfigured, defendant stopped his attack. (See *Park*, *supra*, 112 Cal.App.4th at p. 69 [it is particularly significant that the defendant stopped his attack once he had maimed the victim's face: the defendant had accomplished his objective, which provided sufficient evidence of the defendant's specific intent]; *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 831–832 [the strong inference that the

defendant intended to maim his victim was based on the location of the wounds, the severity of the wounds, and the evidence that he focused his attack on the victim's face].)

We conclude there was sufficient evidence supporting defendant's aggravated mayhem conviction.

## II. Sufficient Evidence of False Imprisonment

Defendant contends there was insufficient evidence to support his convictions for felony false imprisonment of S.H. and Doe. Defendant argues there was no evidence that the false imprisonments were accomplished through violence or menace because there was no express threat of harm or use of a deadly weapon. The People disagree, responding there was sufficient evidence to support defendant's convictions for felony false imprisonment of S.H. and Doe under the totality of the circumstances, from which a reasonable jury could conclude defendant falsely imprisoned both S.H. and Doe by way of menace. We agree with the People.

### A. Additional Background

Defendant prevented S.H. and Doe from leaving defendant's residence by blocking the only exit with his body for about three minutes. Defendant was a "big guy" with Doe's height reaching defendant's waist. S.H. asked defendant to move away from the door so she could leave. S.H. told defendant that she could not breathe. S.H. also said she felt like she was going to faint. Doe stood next to the door screaming and crying. S.H. tried to physically move past defendant and get out the door; defendant stood "stiff" in front of the door, unresponsive.

At trial, the prosecution relied on the theory of false imprisonment effected by menace to support the conviction for felony false imprisonment.

### B. Analysis

As stated above, in reviewing a challenge to the sufficiency of evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

False imprisonment is the unlawful violation of the personal liberty of another. (§ 236.) False imprisonment is a felony if it is "effected by violence, menace, fraud, or deceit." (§ 237, subd. (a).) " 'Menace' is defined as ' " 'a threat of harm express or implied by word or act.' " ' " (*People v. Reed* (2000) 78 Cal.App.4th 274, 280.)[7]

The Courts of Appeal are split on whether an express threat or use of a deadly weapon is necessary to support felony false imprisonment by menace. In *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1491, the Sixth District upheld a conviction of felony false imprisonment effected by menace and found "[a]n express threat or use of a deadly weapon is not necessary." (Accord, *People v. Islas* (2012) 210 Cal.App.4th 116, 125.) There, the defendant's act of continuously and openly holding a gun in his hand throughout his imprisonment of the victim "clearly implied a threat to use the gun to harm [the victim] if he did not comply." (*Wardell*, at p. 1491.) The *Wardell* court reasoned, "[w]hen a rational fact finder could conclude that [the] defendant's acts or words expressly or impliedly threatened harm, the fact finder may find that there is menace sufficient to make false imprisonment a felony." (*Ibid.*)

In contrast, in *People v. Matian* (1995) 35 Cal.App.4th 480, the defendant sexually assaulted the victim by grabbing her breast, which caused the victim pain and possible bruising. (*Id.* at p. 485.) After the sexual assault was over, he "prevented [the victim] from leaving by grabbing her wrist, yelling at her not to go and by thwarting her attempts to leave by glaring and approaching her every time she tried to get out of her chair." (*Id.*

---

[7] We need not consider whether defendant's false imprisonment of S.H. and Doe was effected by violence. As stated above, at trial and on appeal, the People only argue that the felony false imprisonment was effected by menace. During closing argument, the prosecutor argued the false imprisonment of S.H. and Doe was supported by menace because defendant impliedly threatened them.

at p. 484.) The *Matian* court found there was no felony false imprisonment due to the lack of express verbal threat or use of a deadly weapon. (*Id*. at p. 487.)

However, as both defendant and the People point out, *Matian* has been routinely criticized. In *People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1513, this court expressly disagreed with the holding in *Matian*, finding use of a deadly weapon or an express verbal threat of additional physical harm not required to support felony false imprisonment by menace. There, the defendant accosted two young girls on their walk to school and told them to sit in the middle of the road. (*Id*. at p. 1512.) When one of the girls told him "no," the defendant said, " 'If you don't, then I will do something.' " (*Ibid*.) The defendant did not use any weapon or force. (*Id*. at p. 1513.) The defendant did not respond to the victims when they asked him not to hurt them, which the court found as additional evidence of a threat. (*Ibid*.) Thus, the defendant's appellate challenge to the sufficiency of the evidence of menace based on *Matian* was rejected. (*Ibid*.)

With this authority in mind, we turn to the facts of this case. Defendant prevented S.H. and Doe from leaving after he attacked them with a knife. S.H. begged to leave, covered in blood. She told defendant she could not breathe and was going to faint. Doe was screaming and crying. Defendant did not respond and stood "stiff" blocking the door for about three minutes. (*People v. Aispuro*, *supra*, 157 Cal.App.4th at p. 1513 [the defendant's failure to respond to the victim's requests during false imprisonment supports the inference of an implied threat of further harm].) Although defendant did not use a knife or verbally threaten S.H. and Doe when he prevented them from leaving, a reasonable jury could infer defendant's actions, given the totality of the circumstances, constituted evidence of an implied threat of continued harm. (See, e.g. *People v. Reed*, *supra*, 78 Cal.App.4th at p. 281 [two victims who were not pistol whipped or injured but believed they were going to be killed because the defendant had a gun supported false imprisonment effected by menace].)

12.

We also find the facts of our case to be different than in *Matian*. By stabbing S.H. multiple times, nearly causing her demise, and cutting deep lacerations on both sides of Doe's face, defendant impliedly threatened to use the same knife again to either continue to harm or kill S.H. and Doe when he refused to let them exit the residence. No similar implied threat of harm was present in *Matian*. The defendant in *Matian* did not utilize any weapon and did not so seriously injure the victim to cause the victim to believe further harm with that weapon would be employed. (*People v. Matian*, *supra*, 35 Cal.App.4th at pp. 484–485.)

In sum, the evidence permitted the jury to find that defendant prevented S.H. and Doe from leaving the residence and created a climate of fear and implied threat of further harm after he attempted to murder S.H. and made two deep lacerations on Doe's face. The evidence supports the reasonable conclusion defendant falsely imprisoned S.H. and Doe by menace.

## **DISPOSITION**

The judgment affirmed.


                                                                              DE SANTOS, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.


13.